# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR LANDIN-MOLINA,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 05-73677

Agency No.
A079-652-076

PETRA ESTRADA-MENDOZA,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 05-75825

Agency No.
A076-346-685

OPINION

On Petitions for Review of Orders of the
Board of Immigration Appeals

Submitted June 12, 2009*
San Francisco, California

Filed September 1, 2009

Before: Stephen S. Trott, M. Margaret McKeown and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge McKeown

---

*The panel unanimously finds these cases suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

12179

**COUNSEL**

Nicomedes E. Suriel, Phoenix, Arizona, for petitioner Landin-Molina.

Peter D. Keisler, Assistant Attorney General, Mark C. Walters, Assistant Director, Joanne E. Johnson, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, DC, for the respondent.

Christopher J. Todd, Mill Valley, California; Stephen V. Scribner, Santa Rosa, California, for petitioner Estrada-Mendoza.

Peter D. Keisler, Assistant Attorney General, Emily Anne Radford, Assistant Director, Gjon Juncaj, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, DC, for the respondent.

## OPINION

McKEOWN, Circuit Judge:

We consider here an alien's eligibility to adjust to lawful permanent resident status via the "grandfathering" regulations implementing § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i) ("§ 1255(i)"). Adjustment of status is generally available only to aliens who were inspected and admitted or paroled into the United States, *see* INA § 245(a), 8 U.S.C. § 1255(a); however, under § 1255(i), certain aliens who entered this country without inspection may apply for adjustment of status. Section 1255(i) expired on April 30, 2001, and, at present, its benefits are available only to those aliens who qualify as having been "grandfathered" into the provision. *See* 8 C.F.R. § 245.10(b).

This appeal involves two natives and citizens of Mexico, Victor Landin-Molina ("Landin") and Petra Estrada-Mendoza ("Estrada"), who entered the United States unlawfully. Although these individuals are unrelated, we consolidated their petitions for review with respect to the grandfathering issue.

Landin argues that he is grandfathered by virtue of his marriage to Viviana Ojeda, who adjusted her status as a grandfathered alien. Unfortunately for Landin, the grandfathering provision does not assist his case. Because the marriage occurred *after* Ojeda adjusted to lawful permanent resident status, she does not impart grandfathered status to him. Estrada argues that she is grandfathered based upon her registration for the Replenishment Agricultural Worker ("RAW") program. She is not grandfathered, however, because being a registrant for the RAW program does not satisfy the requirement of having filed an application for labor certification. Consequently, we deny the petitions.[1]

## ANALYSIS

### I.  INA § 245(i), 8 U.S.C. § 1255(i)

Prior to 1952, immigrant status was predicated upon the issuance of an immigrant visa, which could be obtained only at U.S. consular offices abroad. *See Choe v. INS*, 11 F.3d 925, 928 (9th Cir. 1993). Under that rule, an alien already inside this country could acquire immigrant status only by temporarily leaving the United States to secure an appropriate visa. *See id.* In 1952, Congress enacted INA § 245, 8 U.S.C. § 1255, which authorized a process — "adjustment of status" — whereby certain aliens physically present in the United States could seek lawful permanent resident status without having to depart this country. Immigration and Nationality Act, Pub. L. No. 82-414, tit. II, ch. 5, § 245, 66 Stat. 163, 217 (1952).

As initially established, this process benefitted only those aliens who were in the United States *lawfully*. *See id.*; *Succar v. Ashcroft*, 394 F.3d 8, 13-14 (1st Cir. 2005). Today, adjustment of status under INA § 245(a), the principal adjustment provision, is available only to aliens who were inspected and

---

[1]Estrada's remaining claims are addressed in a memorandum disposition filed concurrently with this opinion.

admitted or paroled into the United States, and to certain aliens with approved classification petitions brought under the Violence Against Women Act ("VAWA"). *See* 8 U.S.C. § 1255(a).[2]

This case involves INA § 245(i), 8 U.S.C. § 1255(i), which authorizes adjustment of status for certain aliens *unlawfully* in the United States. Congress enacted this "alternative" adjustment provision in 1994. *See* Pub. L. 103-317, tit. V, § 506(b), 108 Stat. 1724, 1765-66 (1994); *see also Gonzales v. DHS*, 508 F.3d 1227, 1230 (9th Cir. 2007).[3] As amended by the Legal Immigration Family Equity Act of 2000, Pub. L. 106-554, tit. XV, § 1502(a), 114 Stat. 2763, 2763A-324 (2000), § 1255(i) permits aliens who entered the United States without inspection to apply for adjustment of status, provided the alien is the beneficiary of either a petition for classification under 8 U.S.C. § 1154 or an application for a labor certification under 8 U.S.C. § 1182(a)(5)(A). The petition or application must have been filed on or before April 30, 2001. *See* 8 U.S.C. § 1255(i)(1)(A)-(B). Any qualifying alien's spouse or children, if eligible to receive a visa under 8 U.S.C. § 1153(d),

---

[2]Section 1255(a) provides in full:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

[3]The 1994 law expired on October 1, 1997. Pub. L. No. 103-317, tit. V, § 506(c), 108 Stat. at 1766. Congress revived the provision later that same year and extended its availability to aliens who were the beneficiaries of qualifying classification petitions or labor certification applications filed on or before January 14, 1998. *See* Pub. L. No. 105-119, tit. I, § 111, 11 Stat. 2440, 2458 (1997).

may also seek a status adjustment under § 1255(i); the qualifying alien is called the "principal" alien. *Id.* § 1255(i)(1)(B).

Upon receipt of the adjustment application, the Attorney General may adjust the status of the alien to that of a lawful permanent resident if "(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed." *Id.* § 1255(i)(2).

Following the 2000 legislative amendment, adjustment of status under § 1255(i) is presently unavailable except for those aliens who qualify as being grandfathered into the section. *See* 8 C.F.R. § 245.10(b). Under the implementing regulations, a "grandfathered alien" for the purposes of § 1255(i) is:

> an alien who is the beneficiary (including a spouse or child of the alien beneficiary if eligible to receive a visa under [8 U.S.C. § 1153(d)]) of:
>
> > (A) A petition for classification under [8 U.S.C. § 1154] which was properly filed with the Attorney General on or before April 30, 2001, and which was approvable when filed; or
> >
> > (B) An application for a labor certification under [8 U.S.C. § 1182(a)(5)(A)] that was properly filed pursuant to the regulations of the Secretary of Labor on or before April 30, 2001, and which was approvable when filed.

8 C.F.R. § 245.10(a)(1)(i). The term "approvable when filed" means that, "as of the date of the filing of the qualifying immigrant visa petition . . . or qualifying application for labor

certification, the qualifying petition or application was properly filed, meritorious in fact, and non-frivolous ('frivolous' being defined as patently without substance)." *Id.* § 245.10(a)(3). "This determination will be made based on the circumstances that existed at the time the qualifying petition or application was filed." *Id.*

## II.    Landin and Estrada Are Not Grandfathered Into § 1255(i)

Having entered the United States unlawfully, Landin and Estrada may pursue adjustment of status only under § 1255(i), and they may do so only if they are grandfathered into the provision. We conclude that neither qualifies as a grandfathered alien.

### A.    Landin

Landin entered the United States without inspection in January 1999, after which the Immigration and Nationality Service ("INS")[4] initiated removal proceedings against him. On May 17, 2004, an immigration judge ("IJ") determined that Landin was removable but granted him the privilege of voluntary departure.

The very next day, Landin married Viviana Ojeda — a lawful permanent resident of the United States. Ojeda, who had grandfathered into § 1255(i), adjusted to lawful permanent resident status in April 2004, just weeks before marrying Landin.

Landin then filed with the immigration court a timely

---

[4]On March 1, 2003, the INS was abolished and its functions were transferred to the newly created Department of Homeland Security ("DHS"). Homeland Security Act of 2002, Pub. L. No. 107-296, tit. IV, § 471, 116 Stat. 2135, 2205 (2002). Because the relevant agency actions generally took place before this transfer, we refer to the INS in this opinion.

motion to reopen his immigration proceedings and to stay his voluntary departure. Landin argued that, by virtue of his recent marriage to Ojeda, he was grandfathered into § 1255(i).[5] The IJ denied the motion, concluding that Landin was not grandfathered because his marriage to Ojeda occurred after her status was adjusted. The Board of Immigration Appeals ("BIA") affirmed without opinion under 8 C.F.R. § 1003.1(e)(4).[6]

[1] On appeal, Landin again advances the argument that he is entitled to grandfathered status under § 1255(i) based upon his wife's having adjusted her status via the grandfathering regulations. In interpreting § 1255(i), we begin with the plain language of the statute. *See Altamirano v. Gonzales*, 427 F.3d 586, 592 (9th Cir. 2005). Section 1255(i) provides that the spouse of a qualifying principal alien is also eligible to seek the benefits of that provision, if the derivative spouse is eligible for a visa under 8 U.S.C. § 1153(d). *See* 8 U.S.C. § 1255(i)(1)(B). In turn, § 1153(d) requires that the derivative spouse be "accompanying or following to join" the principal spouse. 8 U.S.C. § 1153(d).[7] Thus, under the plain language

_____

[5]Landin further contended that he was eligible for adjustment of status based on his substitution for another person in an approved labor certification application filed by his employer. Landin concedes that substituted beneficiaries in labor certification applications filed on or before April 30, 2001 are not grandfathered by regulation. *See* 8 C.F.R. § 245.10(j).

[6]When the BIA affirms without opinion under its streamlining procedures, the BIA endorses the result reached by the IJ, but not necessarily the IJ's reasoning. 8 C.F.R. § 1003.1(e)(4). The IJ's decision is the final agency determination. *Id.* Therefore, we review the IJ's decision as we would a decision of the BIA. *See Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004).

[7]Section § 1153(d) provides in full:

A spouse or child as defined in subparagraph (A), (B), (C), (D), or (E) of section 1101(b)(1) of this title shall, if not otherwise entitled to an immigrant status and the immediate issuance of a visa under subsection (a), (b), or (c) of this section, be entitled to the same status, and the same order of consideration provided in

of § 1255(i), a derivative spouse is only eligible for an adjustment of status under that provision if he or she is "accompanying or following to join" the principal alien. As we recognized in *Santiago v. INS*, with the phrase "accompanying or following to join," Congress intended to preserve family unity by permitting an alien who qualifies for immigrant status "to bring his family with him or to send for them later when he ha[s] the ability to do so." 526 F.2d 488, 490-91 (9th Cir. 1975) (*en banc*) (interpreting 8 U.S.C. § 1153(a)(9)); *see also Matter of Kahn*, 14 I&N Dec. 122, 123-24 (BIA 1972), *aff'd sub nom. Santiago*, 526 F.2d 488.

**[2]** Likewise, under the grandfathering regulations, a principal alien who is grandfathered into § 1255(i) may impart grandfathered status to a spouse, again provided that the spouse is eligible to receive a visa under § 1153(d). *See* 8 C.F.R. § 245.10(a)(1)(i). It follows, then, that if a derivative spouse is not "accompanying or following to join" the principal grandfathered alien, the spouse is not entitled to grandfathered status by virtue of the spousal relationship.

Landin waived the argument that he is "accompanying or following to join" Ojeda. Indeed, he acknowledged before the IJ that he was ineligible to accompany or follow to join his wife within the meaning of § 1153(d) because the qualifying spousal relationship did not exist at the time she adjusted status to that of lawful permanent resident. Instead, Landin

---

the respective subsection, if accompanying or following to join, the spouse or parent.

8 U.S.C. § 1153(d).

The words "accompany" and "following to join" are terms of art defined in the regulations. A derivative beneficiary is considered to "accompany" the principal alien if he or she is in the physical company of the principal or is issued an immigrant visa within six months of the date that the principal receives immigrant status. 22 C.F.R. § 40.1(a)(1). After six months, the derivative beneficiary is "following to join" the principal.

argued that the grandfathering provision was untethered from the "accompanying or following to join" requirement. We have trouble understanding this argument because it is at odds with § 1255(i)'s specific reference to § 1153(d), which requires that the spouse be "accompanying or following to join" the principal alien. *See K.V. Mart Co. v. United Food & Commercial Workers Int'l Union, Local 324*, 173 F.3d 1221, 1225 (9th Cir. 1999) (noting that statutes should be interpreted as whole, giving effect to each word, and should not be interpreted in a manner that renders words or provisions inconsistent, meaningless, or superfluous). Because Landin does not argue that he is (or was) accompanying or following to join his wife under § 1153(d), Landin cannot be a derivative spouse.

**[3]** As Landin conceded, he cannot satisfy the "accompanying or following to join" rule, because his marriage occurred *after* his wife adjusted to lawful permanent resident status. *See Matter of Naulu*, 19 I&N Dec. 351, 352 n.1 (BIA 1986) ("The relationship between the principal alien and the derivative beneficiary must exist *before* the principal alien gains permanent resident status as well as at the time the derivative beneficiary seeks entry as an immigrant or adjustment of status." (emphasis added)). The plain language of § 1153(d) requires that the derivative "spouse" accompany or follow to join the principal "spouse." Implicitly there is a temporal element of already being a "spouse." Thus, § 1153(d) clearly contemplates that the marital relationship exists *before* the principal receives immigrant status. Such a construction is consistent with our observation in *Santiago* that Congress intended to "preserve" — i.e., maintain — the unity of existing families by permitting qualifying aliens to bring their families with them or to send for them later. 526 F.2d at 490. If the marital relationship transpires *after* the principal receives immigrant status, the putative derivative spouse cannot have accompanied or followed to join a "spouse" because there was simply no spouse to accompany or follow at the time the principal adjusted status, and the language of § 1153(d)

implicitly requires that the derivative spouse be a "spouse" before the principal adjusts status. Such is Landin's situation: being not married to Ojeda at the time she adjusted status, he did not accompany or follow to join a principal spouse. *Cf. Matter of G*, 7 I&N Dec. 731, 733-34 (BIA 1958) ("Both the statutory language and the legislative history support the conclusion that the class or category granted the same preference as the skilled immigrant by section 203(a)(1) was the *existing* family, that is, the wife and children, of the principal *applicant*." (emphasis added)).

**[4]** Given this background, it is equally clear that for a grandfathered alien to impart grandfathered status to a spouse, the marriage must occur before the grandfathered alien adjusts status. Our conclusion is reinforced by an interim rule implementing and interpreting § 1255(i) and 8 C.F.R. § 1245.10(a), which states that in order for an alien-spouse who is accompanying or following to join a grandfathered alien to be considered grandfathered, the marital relationship between the two aliens must "exist[ ] before the principal alien adjusts his or her status." 66 Fed. Reg. 16383, 16384 (March 26, 2001). In a 1999 policy memorandum discussing grandfathering under § 1255(i), the INS explained that

> [m]any aliens with pending, grandfathered petitions or labor certification applications will marry or have children after the qualifying petition or application was filed but before adjustment of status. These "after-acquired" children and spouses are allowed to adjust under [§ 1255(i)] as long as they acquire the status of a spouse or child before the principal alien ultimately adjusts status. An alien who becomes the child or spouse of a grandfathered alien *after* the alien adjusts status or immigrates cannot adjust status under [§ 1255(i)] unless he or she has an independent basis for grandfathering.

Office of the Executive Association Commissioner, INS, U.S. Dep't of Justice, Accepting Applications for Adjustment of

Status Under Section 245(i), HQ 70/23.1-P, HQ 70/8-P at 5 (Jun. 10, 1990) (emphasis added), *reproduced and interpreted at* 76 Interpreter Releases 1017, 1020 (July 2, 1999); *see also* 78 Interpreter Releases 553 (March 26, 2001).

This interim rule and guidance memorandum are entitled to respect to the extent that they are persuasive. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference. Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.' " (internal citations omitted)); *see also Karouni v. Gonzales*, 399 F.3d 1163, 1171 n.11 (9th Cir. 2005) (stating that if the INS departed from a guidance memorandum or rule without reason, such action could be viewed as arbitrary, capricious, or an abuse of discretion).

**[5]** It is undisputed that Landin married his wife *after* she adjusted to lawful permanent resident status; therefore, Landin does not qualify as a grandfathered alien under established INS rules and policies, which we view as persuasive. Indeed, if grandfathered aliens who adjusted to lawful permanent resident status could impart grandfathered status to relatives acquired after the adjustment occurred, then § 1255(i)'s filing cut-off date would be nullified with respect to those individuals. *Cf. Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1049-1050 (9th Cir. 2008) (holding § 1255(i)'s April 30, 2001 sunset provision was a fixed deadline, and that § 1255(i) is a statute of repose not subject to equitable tolling). If we were to accept Landin's interpretation of the statute, lawful permanent residents who adjusted to such status under § 1255(i) via the grandfathering regulations would be able to perpetually impart grandfathered status to others.

## B. Estrada

Estrada, who entered the United States without inspection in 1987, worked for a number of years as an agricultural worker in Northern California. In 1999, the INS initiated removal proceedings against Estrada; she conceded removability and designated Mexico as the country of removal. Estrada informed the IJ that she would seek adjustment of status, but her path was full of contingencies. Initially, Estrada's plan required that her fiancé, Guadalupe Castro: (1) finalize his divorce from his then wife, (2) wed Estrada, (3) complete naturalization, and (4) petition for Estrada's legal status in the United States. Estrada's hope was that ultimately she would be able to adjust her status based upon the petition filed by Castro.[8]

In fact, Castro divorced in the summer of 2000, and he and Estrada married in the fall of that year. Castro became a naturalized U.S. citizen in May 2002, and in the following October he filed an I-130 Petition for Alien Relative on Estrada's behalf.

Nonetheless, in June 2004 — after numerous other hearings and continuances, and more than four years after Estrada's first appearance in immigration court — the IJ denied Estrada's adjustment application and granted her the privilege of

---

[8]Under the INA, certain immediate relatives of U.S. citizens and lawful permanent residents may be issued immigrant visas or otherwise acquire lawful permanent resident status. For an alien to qualify as an immediate relative, the U.S. citizen or lawful permanent resident must file a Form I-130, known now as a "Petition for Alien Relative", on the alien's behalf, and the petition must be approved by the U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. § 204.1(a); *see also Diouf v. Mukasey*, 542 F.3d 1222, 1225 n.1 (9th Cir. 2008). The USCIS's approval of a Form I-130 petition, however, does not make an alien automatically eligible for adjustment of status under § 1255(i). Among other requirements, an immigrant visa must be "immediately available." 8 U.S.C. § 1255(i)(2)(B); *see also Ngongo v. Ashcroft*, 397 F.3d 821, 823 (9th Cir. 2005). The wait time for these immigrant visas can be considerable.

voluntary departure. The IJ reasoned that, even if the I-130 petition were approved, Estrada would not be able to adjust her status because the petition was filed after April 30, 2001 — the sunset date for § 1255(i).[9]

Estrada argued that her 1989 registration for the RAW program served to backdate her I-130 petition. The IJ rejected this argument, as did the BIA when it dismissed Estrada's appeal. The BIA concluded that Estrada's registration for the RAW program did not grandfather her into § 1255(i) because "registry in the RAW program is not a petition for a labor certification or an application for adjustment, but rather it is a registry for individuals who may or may not be chosen to petition for a labor certification should a labor shortfall require the need to replenish the workforce."

On appeal, Estrada again argues that her 1989 registry under the RAW program renders her grandfathered into § 1255(i) and thus eligible to apply for adjustment of status. Specifically, Estrada contends that registry for the RAW program is "at its core" similar to filing a qualifying labor certification application.

In 1986, Congress enacted INA § 210A and authorized the RAW program for fiscal years 1990 to 1993. Immigration Reform and Control Act of 1986, Pub. L. 99-603, tit. III, § 303(a), 100 Stat. 3359, 3422-31 (1986). The RAW program was meant to "provid[e] additional seasonal agricultural workers to United States agricultural employers to alleviate possible shortages of workers for perishable crops. The program allowed the government to replenish the supply of farmworkers by providing foreign workers with legal resident

---

[9]Estrada's I-130 petition was approved in October 2004. Such approval does not affect the legal analysis of whether Estrada qualifies as a grandfathered alien who is eligible to adjust her status under § 1255(i). The approval of her I-130 petition would be relevant only if Estrada were grandfathered into § 1255(i).

status if the Secretaries of Agriculture and Labor determined that a shortage of such workers existed." 59 Fed. Reg. 24031, 24031-32 (May 10, 1994). Specifically, the Secretaries of Labor and Agriculture were empowered to "jointly determine the number (if any) of additional aliens who should be admitted to the United States or who should otherwise acquire the status of aliens lawfully admitted for temporary residence" in order to "meet a shortage of workers to perform seasonal agricultural services." 8 U.S.C. § 1161(a)(1), *repealed by* Pub. L. 103-416, tit. II, § 219(ee)(1), 108 Stat. 4305, 4319 (1994). In turn, the Attorney General was to "provide for the admission for lawful temporary resident status, or for the adjustment of status to lawful temporary resident status, of a number of aliens equal to the shortage number (if any, determined under subsection (a) of this section)" for each fiscal year, subject to certain limitations. *Id.* § 1161(c)(1). Thus, a RAW was defined as "[a]ny individual granted temporary resident status or permanent resident status under [8 U.S.C. § 1161(c)] of the Act." 8 C.F.R. § 210a.1(i).

The implementing regulations for the RAW program established a registration of eligible aliens "intended to provide an adequate number of persons to satisfy shortage number requirements for several years." 8 C.F.R. § 210a.3(a). The registration period lasted from September 1, 1989 to November 30, 1989. *Id.* § 210a.3(b). *If a shortage number was announced*, registrants were to be selected at random and invited to petition for temporary residence in accordance with various priority classes. *Id.* §§ 210a.2(b), 210a.3(h).

**[6]** We agree with the BIA that Estrada's status as a mere registrant for the RAW program does not grandfather her into § 1255(i), because registration for the RAW program does not qualify as a labor certification application under 8 U.S.C. § 1182(a)(5)(A). Given the parameters and particulars of the RAW program, and specifically its registration process, Estrada was not only one step removed from having filed the requisite application for labor certification, she was not yet

even qualified to file such an application. Rather, Estrada was merely a member of a pool of aliens who might, but might not, be granted the opportunity to petition to become a RAW should a labor shortage arise.

**[7]** Our conclusion is buttressed by the implementing regulations, which specified that "[n]either employment authorization nor any other benefit shall derive from filing a registration card, being placed in a registry pool, or being invited to petition for RAW status." 8 C.F.R. § 210a.3(g). Estrada's own registration card, a Form I-807, repeated a similar disclaimer. Significantly, during the three years during which the RAW program existed, a lack of a sufficient number of agricultural workers was never found to exist. *See* 59 Fed. Reg. at 24032. Thus, no registrant ever emerged from the registration pool to be invited to petition for RAW status. As such, "no immigration benefits were ever granted through the RAW program." *Id.*

**[8]** Estrada argues that we should construe the statute and regulations broadly — deeming the registry for the RAW program functionally equivalent to having filed a labor certification application — in order to effectuate the purpose of § 1255(i), which Estrada asserts to be the preservation and facilitation of family unity. Although we recognize that removal of Estrada from this country will dislocate her from her family, home, and community, the plain language of the statute and regulations simply cannot be stretched as far as Estrada would like. The grandfathering provisions relating to § 1255(i) encompass only "petitions" and "applications for labor certifications" which were "approvable when filed." 8 C.F.R. § 245.10(a)(1)(i); *see also* 8 U.S.C. § 1255(i)(1). Unfortunately for Estrada, simply registering for the possibility of petitioning to become a RAW cannot satisfy the requirement of having filed an application for labor certification that was approvable when filed.

## Conclusion

Landin and Estrada are not grandfathered into § 1255(i), and therefore neither is eligible to apply for adjustment of status to lawful permanent resident of the United States. The petitions for review are DENIED.