**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA DEL CARMEN MEDINA TOVAR; ADRIAN JOVAN ALONSO MARTINEZ, *Plaintiffs-Appellants*, | No. 18-35072 D.C. No. 3:17-cv-00719-BR |
| v. | |
| LAURA B. ZUCHOWSKI, Director, Vermont Service Center, United States Citizenship and Immigration Services; CHAD F. WOLF, Acting Secretary, Department of Homeland Security; WILLIAM P. BARR, Attorney General, *Defendants-Appellees.* | AMENDED OPINION |

Appeal from the United States District Court
for the District of Oregon
Anna J. A. Brown, District Judge, Presiding

Argued and Submitted May 15, 2019
Portland, Oregon

Filed February 12, 2020

Before:  N. Randy Smith, Paul J. Watford, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge N.R. Smith;
Dissent by Judge Watford

## SUMMARY[*]

### Immigration

The panel filed an amended opinion affirming the district court's grant of summary judgment in favor of government defendants in a case involving when a spousal relationship must exist for a spouse to be eligible for derivative U-visa status.  In the amended opinion, the panel deferred to a regulation adopted by the United States Citizenship & Immigration Service ("USCIS") that construed the statutory phrase "accompanying, or following to join" to require that a spouse's qualifying relationship exist at the time of the filing of the initial U-visa petition.

A U visa grants temporary, lawful, nonimmigrant resident status to an alien who has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity in the U.S. and who helped law enforcement investigating or prosecuting that criminal activity.  Under 8 U.S.C. § 1101(a)(15)(U)(ii), a U-visa recipient may petition for derivative status for a qualifying relative who is "accompanying, or following to join," the principal alien.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

That provision specifies which relationships may qualify for derivative U-visa status: "(I) in the case of [a principal alien] who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien; or (II) in the case of [a principal alien] who is 21 years of age or older, the spouse and children of such alien." The regulation at issue here, 8 C.F.R. § 214.14(f)(2), provides that the relationship between the principal alien and the qualifying family member must exist at the time the principal alien's petition was filed, must continue to exist at the time the derivative petition is adjudicated, and at the time of the qualifying family member's subsequent admission to the U.S.

The principal alien in this case, Maria Medina Tovar, a Mexican citizen, came to the U.S., was the victim of a serious crime, and was helpful to law enforcement. She submitted her petition for a U visa and later married a Mexican citizen. She was then granted U-visa status and filed for derivative U-visa status for her husband. The USCIS denied that petition on the ground that the couple was not married when Tovar filed her initial petition. Tovar and her husband ("Plaintiffs") sought review in the district court, which granted the government defendants' summary judgment motion.

The panel applied the two-step analysis from *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to review the agency's construction of the phrase "accompanying, or following to join." First, the panel concluded that Congress has not directly spoken to the question of when a qualifying relationship must exist for an "accompanying, or following to join," family member to be eligible for derivative U-visa status. The panel rejected Plaintiffs' contention that "accompanying, or following to

join" has a well-established meaning, explaining that the agency has defined the phrase differently depending on the alien's status. For example, for a refugee, the qualifying relationship must exist prior to the refugee's admission to the U.S, must continue to exist at the time of filing for derivative benefits, and at the time of the derivative's admission to the U.S. Whereas, for asylum, the relationship must exist at the time the principal alien's asylum application was approved, must continue to exist at the time of filing for derivative benefits, and at the time of the derivative's admission to the U.S.

The panel also rejected Plaintiffs' assertion that the "age out" provision for unmarried siblings – which provides that an eligible unmarried sibling is one who is under 18 at the time when the principal applied for a U visa – makes it clear that Congress did not intend to limit other qualifying family members to the date of the application. The panel explained that the statutory provision does not provide any instruction regarding the timing of when a spouse's relationship would qualify for status.

At step two of *Chevron*, the panel concluded that the agency's regulation imposes reasonable requirements in light of the text, nature, and purpose of the U-visa statute. The panel explained that it is reasonable for the agency to require that qualifying relationships exist at the time of the initial U-visa application, where the purpose of the U-visa statute is to provide only limited, temporary, nonimmigrant status to alien victims of crime (already present in the U.S.) based on their aid to law enforcement.

The panel also concluded that the regulation does not violate Equal Protection. With respect to Plaintiffs' argument

that spouses and children of U-visa recipients are similarly situated and yet treated inconsistently without a rational basis, the panel concluded that spouses and children are not similarly situated because the dependency of spouses is not equivalent to that of the parent-child relationship. The panel further concluded that, even if the groups were similarly situated, treating spouses and children differently is rationally based on Congress's interest in preventing marriage fraud. With respect to Plaintiffs' argument that spouses of U-visa holders, refugees, asylees, and other nonimmigrant and immigrant visa holders are similarly situated and improperly treated differently, the panel concluded that immigration fraud concerns and the underlying purposes of the different visa categories provide a rational basis for the different treatment of U-visa spouses as compared to other spouses.

Dissenting, Judge Watford wrote that he would reverse on the ground that the regulation is not a valid interpretation of the governing statute. Judge Watford wrote that USCIS's interpretation cannot be squared with the well-settled meaning of "accompanying or following to join," which had consistently been construed to mean that the marital relationship must exist at the time the principal petitioner's application is granted, not when her application was filed. Looking at the rules for refugees and asylees, Judge Watford observed that in both contexts, principal petitioners may seek derivative status on behalf of their spouses if the marriage exists when the principal petitioner is granted status. Judge Watford also wrote that it is clear that Congress used the phrase "accompanying or following to join" in its traditional sense in the U-visa statute because when Congress wished to depart from that meaning it did so explicitly, by providing that a principal petitioner who is under the age of 21 may petition for derivative status on behalf of unmarried siblings

under 18 years of age on the date on which such alien applied for status.

## COUNSEL

Philip James Smith (argued), Nelson Smith LLP, Portland, Oregon, for Plaintiffs-Appellants.

Aaron S. Goldsmith (argued), Senior Litigation Counsel; Jeffrey S. Robins, Assistant Director; William C. Peachey, Director; District Court Section, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

N.R. SMITH, Circuit Judge:

The United States Citizenship & Immigration Service ("USCIS") permissibly construed the statutory phrase "accompanying, or following to join" in 8 U.S.C. § 1101(a)(15)(U)(ii) when it adopted its regulation, 8 C.F.R. § 214.14(f)(4), requiring that a spouse's qualifying relationship exists at the time of the initial U-visa petition and that the qualifying relationship continues throughout the adjudication of the derivative petition. Thus, we must accord *Chevron* deference to the USCIS's interpretation of the statute in enacting the regulation. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 292 (1988).

## I. Administrative Framework

A U visa is a nonimmigrant visa category that grants temporary, lawful, nonimmigrant resident status to a noncitizen alien who "has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" in the United States and who helped law enforcement "investigating or prosecuting [that] criminal activity." 8 U.S.C. § 1101(a)(15)(U)(i). A U visa provides lawful temporary nonimmigrant status "for a period of not more than 4 years,"[1] but a U-visa holder may apply for an adjustment of status to that of a lawful permanent resident ("LPR") after maintaining U-visa status for three years. *Id.* §§ 1184(p)(6), 1255(m)(1)(A).

A U-visa recipient—a principal alien—may also petition for derivative status for a qualifying relative who is "accompanying, or following to join," that principal alien. *Id.* § 1101(a)(15)(U)(ii). That statutory provision specifies which relationships may qualify for derivative U-visa status:

> (I) in the case of [a principal alien] who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien; or

---

[1] The four-year period may be extended upon certification that "the alien's presence in the United States is required to assist in the investigation or prosecution of such criminal activity" or "if the Secretary determines that an extension of such period is warranted due to exceptional circumstances." 8 U.S.C. § 1184(p)(6).

(II) in the case of [a principal alien] who is 21
years of age or older, the spouse and children
of such alien.

*Id.* When the principal alien adjusts status, the Secretary
"may adjust the status of or issue an immigrant visa to a
spouse [or] a child . . . to avoid extreme hardship" if he or
she did not receive a nonimmigrant visa under
§ 1101(a)(15)(U)(ii). *Id.* § 1255(m)(3).

The agency promulgated regulations interpreting and
implementing these U-visa statutes. 8 C.F.R. §§ 214.14,
245.24. Under the regulations, the principal alien must file a
petition—Form I-918—to obtain U-visa status. *Id.*
§ 214.14(c)(1). The principal alien may also apply for
derivative U-visa status on behalf of qualifying relatives by
submitting a Form I-918, Supplement A. *Id.* § 214.14(f)(2).
"[T]he relationship between the U-1 principal alien and the
qualifying family member must exist at the time Form I-918
was filed, and the relationship must continue to exist at the
time Form I-918, Supplement A is adjudicated, and at the
time of the qualifying family member's subsequent admission
to the United States." *Id.* § 214.14(f)(4). Additionally, the
regulation includes a provision to prevent aliens from aging
out. The age of a principal alien under 21 and that alien's
unmarried siblings under the age of 18 are determined as of
the initial petition date, so that such aliens may qualify for
status even if they are no longer under that age when their
petitions are adjudicated. *Id.* § 214.14(f)(4)(ii).

## II. Procedural History & Facts

The principal alien in this case, Maria Medina Tovar, was
born in Mexico in 1992; she came to the United States when

she was six years old. In 2004, Tovar was the victim of a serious crime while living in Oregon, and she was helpful to law enforcement in the investigation or prosecution of that crime. On June 14, 2013, Tovar filed her U-visa petition (Form I-918). Thereafter, on September 21, 2015, Tovar married Adrian Alonso Martinez, a citizen of Mexico. Tovar was granted U-visa status as of October 1, 2015. On March 26, 2016, Tovar filed a petition for derivative U-visa status (Form I-918, Supplement A) for Martinez as her "accompanying, or following to join," spouse. The USCIS denied that petition, because Tovar and Martinez were not married when Tovar filed her initial petition for principal U-visa status, as required by 8 C.F.R. § 214.14(f)(4).

On May 8, 2017, Plaintiffs filed a complaint in district court seeking declaratory and injunctive relief from USCIS's denial of derivative status for Martinez.[2] On cross-motions for summary judgment, Plaintiffs argued that the regulation requiring the marital relationship to exist at the time of the principal U-visa petition is contrary to the statute and that the regulation violates equal protection under the Fifth's Amendment's Due Process Clause. Defendants replied that the U-visa provision in 8 U.S.C. § 1101(a)(15)(U) is ambiguous, but the agency's regulation is a reasonable interpretation and should be afforded deference.

---

[2] Plaintiffs did not file an administrative appeal of USCIS's denial. However, Defendants conceded before the district court that exhaustion of administrative remedies was not a prerequisite to judicial review in this case. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or . . . agency rule . . . .").

The district court determined that (1) Congress did not directly address the question of when a marital relationship must exist for a spouse to be eligible for U-visa derivative status and (2) the regulation is reasonable and entitled to deference. Additionally, the district court concluded the regulation does not violate equal protection, because its treatment of nonimmigrant spouses is rationally related to immigration concerns (such as marriage fraud) recognized by Congress. Thus, the district court granted Defendants' motion for summary judgment and denied Plaintiffs' motion for summary judgment. Plaintiffs appealed.

### III.  Standard of Review

"We review de novo the district court's grant of summary judgment." *Herrera v. USCIS*, 571 F.3d 881, 885 (9th Cir. 2009).

### IV.  Discussion

### A. *The Statute is Ambiguous as to "Accompanying, or Following to Join."*

As outlined above, Congress authorized the issuance of derivative U-visa status to qualifying relatives who are "accompanying, or following to join," the principal alien. *See* 8 U.S.C. § 1101(a)(15)(U)(ii). The parties agree that this case turns on the meaning of that phrase "accompanying, or following to join."

In reviewing "an agency's construction of the statute which it administers," we must employ the two-step *Chevron* analysis. *See Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984). At step one of *Chevron*,

we must determine whether Congress has provided an answer to the precise question at issue. "If the intent of Congress is *clear* . . . the court, as well as the agency, must give effect to the *unambiguously expressed intent* of Congress." *Id.* at 842–43 (emphasis added). "If, however, the court determines Congress has not *directly addressed the precise question at issue*, the court does not simply impose its own construction on the statute." *Id.* at 843 (emphasis added). "Rather, if the statute is silent or ambiguous with respect to the *specific* issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (emphasis added).

Here, Congress has not directly spoken to the question at issue: when must a qualifying relationship exist for an "accompanying, or following to join," family member to be eligible for derivative U-visa status? "[A]ccompanying, or following to join" is not defined by statute, even though Congress has used the phrase in numerous sections of the Immigration and Nationality Act. *See, e.g.*, 8 U.S.C. §§ 1153, 1158.

Congress has never directly addressed when a qualifying relationship must exist. Neither the plain language nor the surrounding language of the U-visa statute answer the question. In the surrounding language, Congress only designated qualifying "accompanying, or following to join," family members in the U-visa context with this language:

> (I) in the case of [a principal alien] who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status

under such clause, and parents of such alien; or

(II) in the case of [a principal alien] who is 21 years of age or older, the spouse and children of such alien.

8 U.S.C. § 1101(a)(15)(U)(ii); *see also* 8 U.S.C. § 1184(p). Otherwise, the statutory language is silent with regard to whether Congress intended that the qualifying relationship exist (1) when the principal filed his or her application, (2) when the application is adjudicated, (3) throughout the entire process, or (4) at some time after the principal alien has been granted status. In the absence of such an indication, we cannot impose our own construction of the statute.

Plaintiffs argue to the contrary. First arguing that the intent of Congress is clear from the language of the statute, Plaintiffs assert that "accompanying, or following to join" has a well-established meaning, and that Congress (in other contexts) has never limited the spouses' eligibility to the date of an application.

However, all parties agree that Congress has never defined this statutory phrase. Thus, we must look to case law or regulations to determine whether the phrase had a well-settled meaning at the time Congress enacted the statute. *Cf. Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1074 (9th Cir. 2008) (explaining that "[w]here a statute does not expressly define a term of settled meaning, courts interpreting the statute must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of that term" (internal quotation marks and alterations omitted)). The Supreme Court has held that "Congress'

repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). However, contrary to Plaintiffs' (and the dissent's) argument, "accompanying, or following to join" did not have a settled meaning when Congress enacted the Victims of Trafficking and Violence Protection Act in October 2000. *Cf. Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989) (noting that "[w]here Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms" (alteration omitted)). Instead, the agency has defined "accompanying, or following to join" differently depending on the alien's status. *See, e.g.*, Procedures for Filing a Derivative Petition (Form I-730) for a Spouse and Unmarried Children of a Refugee/Asylee, 63 Fed. Reg. 3792-01 (Jan. 27, 1998) (codified at 8 C.F.R. pts. 207, 208, and 299).

Giving consideration to the only two examples from the nonimmigrant context, the qualifying relationship for a refugee "must have existed prior to the refugee's admission to the United States and must continue to exist at the time of filing for accompanying or following-to-join benefits and at the time of the spouse or child's subsequent admission to the United States." 8 C.F.R. § 207.7(c). Whereas, in considering the qualifying relationship for asylum, it "must have existed at the time the principal alien's asylum application was approved and must continue to exist at the time of filing for accompanying or following-to-join benefits and at the time of the spouse or child's subsequent admission to the United States." 8 C.F.R. § 208.21(b). Thus, as is evident, both of these regulations have different timing requirements for when

the spouse's qualifying relationship must exist. Although asylee applicants may be more like U-visa applicants (because they are both present in the United States), there is no basis to conclude that (when it adopted the statute) Congress intended the phrase have the same meaning for U-visa applicants as it does for asylees.**[3]**

When enacting a statute, we presume Congress was aware of the different regulations interpreting this phrase in the immigrant, asylum, refugee, and U-visa contexts. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988); *cf. Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1052 (9th Cir. 2015). Yet, Congress never added a definition of "accompanying, or following to join" (in *any* context), nor has it added any clarifying language or otherwise provided guidance to the agency on how that language should be interpreted regarding the timing of qualifying relationships.

Second, Plaintiffs assert that the "age out" provision for unmarried siblings makes it clear that Congress did not intend to limit other qualifying family members to the date of the application. Although the "age out" provisions shed light on Congress's intent to preclude the alien him or herself, the

---

**[3]** Additionally, Congress amended 8 U.S.C. § 1101 to add the U visa in 2000, Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464, and the agency promulgated the U-visa regulations in 2007, 72 Fed. Reg. 53014-01 (Sept. 17, 2007). Since then, Congress has amended § 1101 numerous times, including an amendment to the U-visa section itself. *See, e.g.*, Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, 127 Stat. 54 (2013 amendment adding qualifying crimes of which a noncitizen victim may be eligible for U-visa status). However, it has not defined or modified the term "accompanying, or following to join."

alien's children, and unmarried siblings from aging out,[4] 8 U.S.C. §§ 1101(a)(15)(U)(ii), 1184(p)(7), it does not provide any instruction regarding the timing of when the spouse's relationship would qualify for status. Importantly, spouses and parents are the only qualifying relatives that have no risk of "aging out" while the U-visa petition is pending. Further, between spouses and parents, only spouses have the potential of having different dates of assessments. Thus, Congress left a gap to fill with regard to when spouses are eligible. *See* 8 U.S.C. § 1101(a)(15)(U)(ii). The fact that Congress addressed when the alien and other qualifying relatives should be assessed to preclude them from aging out, does not unambiguously mean that Congress intended that *spouses* be assessed at a different time than the date of application.[5]

---

[4] "Where Congress wanted to exempt certain aliens from aging out, it has done so explicitly." *Contreras Aybar v. Johnson*, 295 F. Supp. 3d 442, 455 (D.N.J. 2018), *aff'd sub nom. Contreras Aybar v. Sec'y U.S. Dep't of Homeland Sec.*, 916 F.3d 270 (3d Cir. 2019) (recognizing that in 2013, Congress enacted legislation to protect children from aging out in the U-visa context).

[5] However, Congress has made it clear that once a U-visa holder adjusts his or her status to legal permanent resident, "the Secretary of Homeland Security may adjust the status of or issue an immigrant visa to a spouse, a child, or in the case of an alien child, a parent who did not receive a nonimmigrant visa under section 1101(a)(15)(U)(ii) of this title if the Secretary considers the grant of such status or visa necessary to avoid extreme hardship." *See* 8 U.S.C. § 1255(m)(3); *see also* 8 C.F.R. § 245.24(h)(1)(iv) (defining extreme hardship). This provision, read in context, makes it clear the assessment date for determining eligibility for a qualifying family member must exist at some time prior to the U-visa petitioner adjusting his or her status.

Because "Congress has not directly addressed the precise question at issue" and "the statute is silent or ambiguous with respect to [this] specific issue," *Chevron*, 467 U.S. at 843, we must "not simply impose [our] own construction on the statute," *id.*, but instead must ask whether the agency's regulation reasonably fills the gap in the statute.

### B.  *The Agency Reasonably Interpreted the Ambiguous Phrase.*

The agency has filled that gap by enacting regulations that outline the parameters of the phrase in the various statutory provisions it has been charged to interpret. "[W]here a statute leaves a 'gap' . . . we typically interpret it as granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016). Notably, "[f]illing these gaps . . . involves difficult policy choices that agencies are better equipped to make than courts." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). At step two, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Deference "is especially appropriate in the immigration context," *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999), and "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency," *Chevron*, 467 U.S. at 844. An agency's interpretation is permissible "unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id.*

Here, the agency's regulation imposes reasonable requirements regarding at what times a qualifying

relationship must exist for derivative U-visa status, "in light of the text, nature, and purpose" of the U-visa statute. *Cuozzo*, 136 S. Ct. at 2142. The U visa serves a narrow purpose. It was not created to allow aliens to come to the United States to work or attend school; it is not an immigrant visa designed to extend status to aliens who intend to permanently reside in the United States; nor does it offer protection to aliens seeking refuge from harm in their home country. Instead, the U visa operates to grant limited, temporary, nonimmigrant status to aliens already present in the United States who were victims of a serious crime. The U visa requires that aliens be or have been helpful in the investigation or prosecution of those crimes. Notably, the U visa does not require aliens to demonstrate that they will benefit the United States by providing a skill, performing work, or bringing jobs; and it does not require aliens to explain why they left their home country or whether they could safely return. The narrow nature and purpose of the U visa supports the agency's regulation. It is reasonable for the agency to require that qualifying relationships exist at the time of the initial U-visa application, where U-visa status provides only limited, temporary, nonimmigrant status to alien victims of crime (already present in the United States) based on their aid to law enforcement.

Thus, the agency's regulation is not "arbitrary, capricious, or manifestly contrary to the statute." *See Chevron*, 467 U.S. at 844; *see also Ruiz-Diaz v. United States*, 618 F.3d 1055, 1061 (9th Cir. 2010) (finding agency's regulation regarding timing of when alien beneficiaries of special immigrant visas may apply for adjustment of status to be reasonable, after determining Congress had been silent on the issue of timing); *Garcia-Mendez v. Lynch*, 788 F.3d 1058, 1064–65 (9th Cir.

2015) (upholding agency's resolution as "a permissible interpretation of an ambiguous statutory scheme").

Plaintiffs argue that the regulation is unreasonable, because it is inconsistent with other regulations interpreting "accompanying, or following to join" in other contexts. That the same statutory phrase—"accompanying, or following to join"—is used in other contexts is not determinative. "[W]ords have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section." *Envtl. Def. v. Duke Energy* Corp., 549 U.S. 561, 574 (2007) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). Put simply, "[c]ontext counts," *id.* at 576, and the circumstances of asylee and refugee status differs significantly from nonimmigrant U-visa status, thus supporting the agency's differing regulations.

As stated above, nonimmigrant U-visa status is limited. U-visa recipients are already present in the United States and have become victims of a serious crime herein; they need not demonstrate why they left their home country or whether they can safely return.[6] *See* 8 U.S.C. § 1101(a)(15)(U)(i). Nonimmigrant U-visa status generally lasts only for a period of four years and must be maintained for three years before a U-visa holder can apply to adjust status. *Id.* §§ 1184(p)(6), 1255(m)(1)(A).

---

[6] Additionally, U-visa applicants need not demonstrate the same general eligibility requirements as asylees and refugees. *See* 8 U.S.C. 1158(b)(2) (noting that alien will be ineligible for asylum if that alien, *inter alia*, participated in persecution of any person on account of a protected ground or was convicted of a particularly serious crime).

By contrast, the status of asylees or refugees is broader for a rational purpose. That status is granted to noncitizens fleeing to the United States to escape harm or persecution in their home country. 8 U.S.C. § 1101(a)(42). Applicants must demonstrate that they have suffered (or likely will suffer) persecution in that country on the account of a protected ground, and are therefore unable to return. *Id.* Although asylum "does not convey a right to remain permanently in the United States," it continues indefinitely and may be terminated only if certain conditions are met. *Id.* § 1158(c)(2). After one year of physical presence in the United States, the asylee may apply for adjustment of status to that of an LPR. *Id.* § 1159(b)(2); 8 C.F.R. §§ 209.1(a)(1), 209.2(a)(1)(ii).

In short, these immigrant and nonimmigrant statutes are aimed at addressing different concerns, have different requirements, and extend different benefits to the status holder. Thus, although the same textual phrase— "accompanying, or following to join"—is used in these contexts, the nature and purpose underlying the grants of status differ significantly. The agency has reasonably addressed these differences in its regulations by requiring that qualifying relationships exist at the time of the initial petition and through the grant of derivative status in the U-visa context, where nonimmigrant status is only temporarily granted for a fixed period of time to individuals based on victimization in the United States.[7]

---

[7] Notably, the agency regulations governing T visas (which operate similarly to U visas, but are made available to victims of trafficking) has the same requirement that a qualifying relationship exist at the time of the initial application and throughout adjudication. 8 C.F.R. § 214.11(k)(4). The same reasonable basis supporting the regulation in the U-visa context

Given the deference to the agency to impose regulations interpreting (and gap filling) the immigration statutes, the requirement that a spouse's qualifying relationship exist at the time of the initial U-visa petition and continue to exist throughout the adjudication of the derivative petition in order to obtain derivative status is a reasonable interpretation.

## C. *Equal Protection under the Fifth Amendment has not been Violated*

"[T]he Due Process Clause of the Fifth Amendment subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Classifications of groups of noncitizens are subject to rational basis review. *See Aleman v. Glickman*, 217 F.3d 1191, 1197 (9th Cir. 2000). Applying rational basis review, a classification "is accorded a strong presumption of validity and must be upheld if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 1200 (internal

provides support for the regulation in the T-visa context. The fact that the agency has created the same requirements for U- and T-visa derivative relationships further demonstrates that the requirements are based on the nature and purpose of the U- and T-visa statutes.

quotation marks and citation omitted). "[T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). Rather, those challenging a regulation "have the burden to negate every conceivable basis which might support it." *Fournier v. Sebelius*, 718 F.3d 1110, 1123 (9th Cir. 2013) (internal quotation marks, citation, and alterations omitted).

Plaintiffs argue that spouses and children of U-visa recipients are similarly situated and yet treated inconsistently without a rational basis. Plaintiffs also argue that spouses of U-visa holders, refugees, asylees, and other nonimmigrant and immigrant visa holders are also similarly situated and thus improperly treated differently.

### 1. *Children and Spouses are not Similarly Situated*

The regulations require that all qualifying relationships exist at the time the U-visa application is filed. 8 C.F.R. § 214.14(f). However, Plaintiffs point out that if the U-visa applicant "proves that he or she has become the parent of a child after [the U-visa application] was filed, the child shall be eligible to accompany or follow to join." *Id.* § 214.14(f)(4)(i). Thus, the child and spouse are not treated similarly. However, we need not reach the issue of whether these regulations violate equal protection, because children (especially in these circumstances) are not similarly situated with adult spouses. *See, e.g.*, *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 61 (2001) (rejecting an equal protection claim between mothers and fathers); *Miller v. Albright*, 523 U.S. 420, 433–45 (1998) (rejecting an equal protection claim

because the challenged classes (unwed mothers and fathers) were not "similarly situated"). Children (in particular, infants) are dependent upon their mother, father, or both for their very survival. Whereas spouses may be dependent upon each other in some respects, that dependency is not equivalent to that of a parent-child relationship.

Even if children and spouses were similarly situated, the distinction between spouses and children does not violate equal protection based on a rational-basis review. Treating spouses and children differently is rationally based on Congress's interest in preventing marriage fraud. The concerns of marriage fraud with derivative spouses are not similarly present with derivative children. Congress has taken steps to ensure that marriage-based immigration be regulated and marriage fraud be punished. *See* Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537. Thus, the prevention of marriage fraud is a legitimate government purpose, and that purpose provides a rational basis for the U-visa regulation's different treatment of spouses as compared to children.

### 2. *Distinction Between Nonimmigrant Derivative Spouses is Rationally Based*.

The timing of when a spouse qualifies for derivative status by "accompanying, or following to join," the principal alien depends upon the underlying relief requested by the principal alien. Plaintiffs generally assert that there is no rational basis for treating U-visa spouses differently than asylum or refugee spouses. To prevail on an equal protection-rational basis challenge, Plaintiffs must "negate every conceivable basis" that could support a rational basis for a distinction between spouses. *Fournier*, 718 F.3d at 1123

(alteration and citation omitted). However, in their opening brief, Plaintiffs do not negate *any* conceivable basis for the distinction. Rather, Plaintiffs only summarily assert that any distinction is irrational and their reply brief fails to address it at all.**[8]** Thus, we need not address this question. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . .").

Nevertheless, Defendants respond that the risk of marriage and immigration fraud provide a rational basis for the different treatment of spouses under the regulations. Immigration fraud concerns and the underlying purpose of the different visa categories provide a rational basis for the different treatment of U-visa spouses as compared to other spouses. As discussed above, asylee and refugee status is extended to noncitizens who come to the United States fleeing their home country and cannot return at that time and applicants must demonstrate what harm they are fleeing and that they may likely be harmed if they return. 8 U.S.C. § 1101(a)(42). Once granted asylum, they may remain in the country indefinitely (unless status is terminated for a specified reason) and adjust to permanent resident status after only a year. *Id.* §§ 1158, 1159.

By contrast, U visas are extended only to noncitizens already present in the United States who have been personally

---

**[8]** Plaintiffs argue that the government cannot rely on marriage fraud as a rational basis, because the government did not rely on this reason when it enacted the regulations. However, under a rational basis review, the government did not need to articulate its reasoning when it enacted the regulations. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).

victimized. *Id.* § 1101(a)(15)(U). U-visa petitioners need not demonstrate why or how they entered the United States or why they do not return to their country of origin. Because it is a nonimmigrant category, U-visa status generally lasts only for a period of four years (and does not confer the same benefits as asylum or refugee status) and must be maintained for three years before a U-visa holder can apply for adjustment of status. *Id.* §§ 1184(p), 1255(m)(1)(A).

Because significant differences exist between the categories of spouses and the requirements for obtaining status, "there is a rational relationship between the disparity of treatment" among spouses and it furthers a "legitimate governmental purpose." *See Aleman*, 217 F.3d at 1200 (citation omitted).

**AFFIRMED.**

WATFORD, Circuit Judge, dissenting:

I would reverse, as I do not think the regulation at issue here is a valid interpretation of the governing statute.

The regulatory provision challenged by the plaintiffs provides in relevant part as follows:

> [T]he relationship between the U-1 principal alien and the qualifying family member must exist at the time Form I-918 was filed, and the relationship must continue to exist at the time Form I-918, Supplement A is adjudicated, and

at the time of the qualifying family member's subsequent admission to the United States.

8 C.F.R. § 214.14(f)(4). The plaintiffs do not challenge the regulation's requirement that the marital relationship exist at the time the petition for derivative status is adjudicated and at the time (if pertinent) of the spouse's subsequent admission to the United States. So our focus is solely on the regulation's requirement that "the relationship between the U-1 principal alien and the qualifying family member must exist at the time Form I-918 was filed."

Section 214.14(f)(4) plainly establishes an eligibility requirement: It purports to define which spouses are eligible to be treated as derivative beneficiaries in the U-visa context. Our cases make clear that an agency may impose eligibility requirements with respect to immigration benefits only if the requirements are grounded in the statutory text. *See Bona v. Gonzales*, 425 F.3d 663, 670 (9th Cir. 2005). Put differently, when Congress has specified the class of non-citizens eligible for a particular immigration benefit, an agency may not "impose[ ] a new requirement that is not contemplated by Congress." *Schneider v. Chertoff*, 450 F.3d 944, 956 (9th Cir. 2006).

The government contends that the eligibility requirement imposed by § 214.14(f)(4) is authorized by the U-visa statute's use of the phrase "accompanying or following to join" to describe those family members eligible to receive derivative status. 8 U.S.C. § 1101(a)(15)(U)(ii). In the government's view, this statutory term is ambiguous, as Congress did not attempt to define it elsewhere in the statute. The government further contends that USCIS reasonably filled this statutory gap by interpreting the phrase to mean

that a spouse may "accompany or follow to join" the principal petitioner only if the marital relationship existed on the date that the principal petitioner filed her application for a U visa.

I do not think USCIS's interpretation can be squared with the well-settled meaning of "accompanying or following to join." By the time Congress enacted the TVPA in 2000, that statutory phrase had been used in dozens of federal immigration provisions, the first dating back to the 1920s. *See* Immigration Act of 1924, ch. 190, § 13(c), 43 Stat. 153, 162. And as applied to spouses, the phrase had consistently been construed to mean that the marital relationship must exist at the time the principal petitioner's application for an immigration benefit is *granted*, not at the time her application was *filed*.

For example, Congress used the phrase "accompanying or following to join" in defining the spouses and children who may be treated as derivative beneficiaries when a non-citizen adjusts her status to that of a lawful permanent resident under 8 U.S.C. § 1255(i). *See* § 1255(i)(1)(B) (incorporating § 1153(d)). As we noted in *Landin-Molina v. Holder*, 580 F.3d 913 (9th Cir. 2009), spouses can "accompany or follow to join" under this 1994 enactment so long as the marital relationship exists at the time the principal petitioner's application for adjustment of status is granted. *Id.* at 919 (citing *Matter of Naulu*, 19 I. & N. Dec. 351, 352 n.1 (BIA 1986)). We relied in part on a 1999 policy memorandum in which the former Immigration and Naturalization Service explained that when a non-citizen seeking to adjust status under § 1255(i) marries or has children "after the qualifying petition or application was filed but before adjustment of status," these "'after-acquired' children and spouses are allowed to adjust under [§ 1255(i)]

as long as they acquire the status of a spouse or child before the principal alien ultimately adjusts status." *Id.* (quoting Accepting Applications for Adjustment of Status Under Section 245(i), HQ 70/23.1-P, HQ 70/8-P, at 5 (June 10, 1999), *reproduced at* 76 Interpreter Releases 1017 (July 2, 1999)). This interpretation of the statutory phrase also accords with the views of the State Department, both before and after enactment of the TVPA. *See* 9 Foreign Affairs Manual 502.1-1(C)(2)(b)(2)(b) (2018); 9 Foreign Affairs Manual 42.42 n.9 (1997).

The phrase "accompanying or following to join" has been given the same meaning in the context of non-citizens applying for asylum or refugee status. In those contexts, too, Congress has extended derivative status to family members "accompanying, or following to join," the principal petitioner. 8 U.S.C. §§ 1157(c)(2)(A) (refugees), 1158(b)(3)(A) (asylees). In neither of those contexts does the spouse's eligibility for derivative status depend on the date on which the principal petitioner filed her application for humanitarian status.

Take first the rule for refugees. So long as the principal petitioner (the refugee) was married to her spouse on the date the principal petitioner is admitted into the United States, the spouse is eligible for derivative status. 8 C.F.R. § 207.7(c); Procedures for Filing a Derivative Petition (Form I-730) for a Spouse and Unmarried Children of a Refugee/Asylee, 63 Fed. Reg. 3792, 3796 (Jan. 27, 1998). The couple need not have been married on the date that the refugee applied for refugee status. Likewise for asylees. Since asylees apply for asylum from within the United States, *see* 8 U.S.C. § 1158(a)(1), the eligibility rule for derivative beneficiaries does not turn on the date the asylee is admitted into the

United States. Instead, if the principal petitioner (the asylee) is married on the date her asylum application is granted, she may petition for her spouse to receive derivative status as well. 8 C.F.R. § 208.21(b); 63 Fed. Reg. at 3796. Again, that remains true even if the asylee married her spouse after applying for asylum. In both contexts, then, principal petitioners may seek derivative status on behalf of their spouses if the marriage exists when the principal petitioner is granted humanitarian status.

As these examples reflect, when Congress enacted the U-visa statute, the phrase "accompanying or following to join" had uniformly been interpreted to mean that eligibility for derivative status is measured at the time the principal petitioner is granted an immigration benefit, not at the time the principal petitioner applies for that benefit. Indeed, despite being pressed to do so, the government could not identify a single instance in which, before 2000, the phrase had been given a contrary construction. That fact triggers "a longstanding interpretive principle: When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (internal quotation marks omitted). Congress' deliberate choice to use the phrase "accompanying or following to join" in the U-visa statute brought with it the old soil concerning the point in time at which the required family relationship for derivative status is measured.

One additional interpretive clue bears mentioning. We know that Congress used the phrase "accompanying or following to join" in its traditional sense in the U-visa statute because when Congress wanted to depart from the settled meaning of that phrase it did so explicitly. Congress provided that a principal petitioner who is under the age of

21 may petition for derivative status on behalf of "unmarried siblings under 18 years of age on the date on which such alien *applied* for status under such clause." 8 U.S.C. § 1101(a)(15)(U)(ii)(I) (emphasis added); *see also* § 1158(b)(3)(B) (establishing similar rule for children of asylees). This provision permits unmarried siblings who would have "aged out" if the family relationship were assessed at the time the principal petitioner's U-visa application is granted to remain eligible for derivative status. By contrast, in the very next subsection, Congress extended eligibility to the spouse and children of a principal petitioner who is 21 years of age or older without any reference to the date of filing. § 1101(a)(15)(U)(ii)(II). That drafting choice provides further confirmation that Congress intended the phrase "accompanying or following to join" to carry its usual meaning—with the family relationship assessed at the time the principal petitioner's application is granted—except with respect to the one category of family members for which it provided otherwise.

"Congress has supplied a clear and unambiguous answer to the interpretive question at hand," so we need not venture beyond step one of the analysis under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018). Congress' use of the phrase "accompanying or following to join" requires USCIS to assess the existence of the marital relationship at the time the principal petitioner's application for a U visa is granted, not when the principal petitioner files her application for a U visa. In my view, § 214.14(f)(4) is invalid insofar as it renders a spouse ineligible for derivative status simply because she married the principal petitioner after the principal petitioner filed her application for a U visa. I would hold that a spouse is eligible

for derivative status so long as the marital relationship exists on the date USCIS grants the principal petitioner a U visa, and on the date USCIS adjudicates the petition for derivative status filed by the principal petitioner on her spouse's behalf.