**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA DEL CARMEN MEDINA TOVAR; ADRIAN JOVAN ALONSO MARTINEZ,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>LAURA B. ZUCHOWSKI, Director, Vermont Service Center, United States Citizenship and Immigration Services; CHAD F. WOLF, Secretary, Department of Homeland Security; WILLIAM P. BARR, Attorney General,<br><br>Defendants-Appellees. | No. 18-35072<br><br>D.C. No. 3:17-cv-00719-BR<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted En Banc September 23, 2020
San Francisco, California

Before:  Sidney R. Thomas, Chief Judge; and Susan P.
Graber, M. Margaret McKeown, Johnnie B. Rawlinson,
Consuelo M. Callahan, Mary M. Murguia,
Paul J. Watford, Mark J. Bennett, Daniel P. Collins,
Daniel A. Bress, and Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Collins;

Dissent by Judge Callahan

GRABER, Circuit Judge:

Plaintiff Maria Medina Tovar, a native and citizen of Mexico, came to the United States with her family in 1998, at the age of six. When she was twelve, a stranger raped her at knife-point in her home. She cooperated with law enforcement court officials and, because of the rape, has suffered substantial trauma. In 2013, Medina Tovar filed a Form I-918 seeking a U visa, which is designed to grant legal status to certain non-citizen victims of crime who assist law enforcement. In September 2015, she married Plaintiff Adrian Alonso Martinez, who also is a native and citizen of Mexico. Thereafter, Medina Tovar was granted U-visa status effective October 1, 2015. On March 29, 2016, she filed a Form I-918, Supplement A, which is a petition for a derivative U visa, for her husband. Defendants, acting on behalf of United States Citizenship and Immigration Services ("USCIS"), denied the petition because Plaintiffs were not married when Medina Tovar filed her initial petition in 2013. Title 8 C.F.R. § 214.14(f)(4) contains the regulatory requirement that spouses be married at the time that the Form I-918 is filed.

Plaintiffs then brought this action for declaratory and injunctive relief. The district court granted Defendants' motion for summary judgment and denied

2

Plaintiffs' motion for summary judgment, ruling that Congress did not address directly the question of when a marital relationship must exist for a spouse to be eligible for derivative U-visa status and that the regulation is a reasonable interpretation of the governing statute.

We have jurisdiction under 28 U.S.C. § 1291. On de novo review, Herrera v. USCIS, 571 F.3d 881, 885 (9th Cir. 2009), we hold that 8 C.F.R. § 214.14(f)(4) is not a permissible interpretation of the governing statute insofar as it requires that spouses be married when the Form I-918 is filed, rather than when the principal petition is granted. Accordingly, we reverse.

## THE STATUTE

Title 8 U.S.C. § 1101(a)(15)(U) sets forth the requirements for obtaining a U visa. In relevant part, the statute grants legal status to

> (i) . . . an alien who files a petition for status under this subparagraph, if the Secretary of Homeland Security determines that–

> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

> (II) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii);

3

(III) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and

(IV) the criminal activity described in clause (iii) . . . occurred in the United States . . . ;

(ii)  if <u>accompanying, or following to join</u>, the alien described in clause (i)–

(I)  in the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, <u>unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause</u>, and parents of such alien; or

(II)  in the case of an alien described in clause (i) who is 21 years of age or older, the spouse and children of such alien; and

(iii)  the criminal activity referred to in this clause is that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law:  rape . . . .

8 U.S.C. § 1101(a)(15)(U) (emphases added).  Medina Tovar unquestionably fits the statutory criteria, as confirmed by USCIS's grant of a U visa.

### THE REGULATION

The regulation that Plaintiffs challenge provides in relevant part:

Except as set forth in paragraphs (f)(4)(i) and (ii) of this section, <u>the relationship between the U-1 principal alien and the qualifying family</u>

4

member must exist at the time Form I-918 was filed, and the relationship must continue to exist at the time Form I-918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States.

(i)  If the U-1 principal alien proves that he or she has become the parent of a child after Form I-918 was filed, the child shall be eligible to accompany or follow to join the U-1 principal alien.

(ii)  If the principal alien was under 21 years of age at the time he or she filed Form I-918, and filed Form I-918, Supplement A for an unmarried sibling under the age of 18, USCIS will continue to consider such sibling as a qualifying family member for purposes of U nonimmigrant status even if the principal alien is no longer under 21 years of age at the time of adjudication, and even if the sibling is no longer under 18 years of age at the time of adjudication.

8 C.F.R. § 214.14(f)(4) (emphasis added).  Plaintiffs contest only the emphasized requirement that the spousal relationship must exist at the time the original Form I-918 is filed.

## ANALYSIS

When reviewing the validity of a regulation, we apply the two-step process that the Supreme Court established in Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984).  Coyt v. Holder, 593 F.3d 902, 905 (9th Cir. 2010).

At step one, we must decide whether the intent of Congress is clear from the terms of the statute that it enacted or whether, instead, the statute is ambiguous.

5

<u>Chevron</u>, 467 U.S. at 842–43. To maintain the proper separation of powers between Congress and the executive branch, we must "exhaust all the traditional tools of construction" before we "wave the ambiguity flag." <u>Kisor v. Wilkie</u>, 139 S. Ct. 2400, 2415 (2019) (internal quotation marks omitted). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842–43.

If, but only if, the statute is ambiguous after using ordinary tools of construction, we reach step two. <u>Id.</u> at 843. At step two, we ask whether the agency has construed the ambiguity in a permissible way. <u>Id.</u>

We have applied the <u>Chevron</u> framework in the immigration context. In doing so, we have held that an agency may not add a new requirement when Congress has specified the criteria for a particular immigration benefit. <u>Schneider v. Chertoff</u>, 450 F.3d 944, 956 (9th Cir. 2006); <u>Bona v. Gonzales</u>, 425 F.3d 663, 670 (9th Cir. 2005). That is precisely the situation we face here.

The question that the regulation answers is this: At what point must a person be married to the principal applicant to first qualify for a derivative U visa as a spouse—(a) when the application is filed, or (b) when the principal applicant receives a U visa?

The regulation adopts the former view.  Defendants reason that the statute fails to define "accompanying, or following to join," making the statute ambiguous, but see Averett v. U.S. Dep't of Health & Human Servs., 943 F.3d 313, 315 (6th Cir. 2019) ("A statute's terms are not ambiguous simply because the statute itself does not define them."), and that the regulation imposes reasonable requirements because an after-acquired spouse is not "accompanying, or following to join," the principal U-visa applicant.

But, when we employ traditional tools of interpretation, the statute plainly answers "no" to the question whether the spousal relationship must exist at the time the original U-visa petition is filed.  Two principles are relevant to our analysis.

First, Congress clearly thought about the timing question.  With respect to principal petitioners who are younger than 21, Congress expressly provided that an unmarried sibling must have been younger than 18 at the time the principal petitioner filed for U-visa status.  "[I]n the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien" are qualifying relatives.  8 U.S.C. § 1101(a)(15)(U)(ii)(I).  By contrast, with respect to other relatives—spouses,

children, and parents—the statute contains no similar reference to or reliance on the date of the principal petitioner's application.

One of the most common tools of statutory construction is this: "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Nken v. Holder, 556 U.S. 418, 430 (2009) (internal quotation marks and brackets omitted). That maxim is especially apt here, because the distinction appears in a single paragraph, 8 U.S.C. § 1101(a)(15)(U)(ii). Congress intended that the timing of the petition is relevant with respect to only one category of relatives: unmarried siblings under 18 years of age. Indeed, the regulation expressly recognizes that children of a principal petitioner are qualifying relatives even if they were not born when the Form I-918 was filed, 8 C.F.R. § 214.14(f)(4)(i). Yet the regulation fails to recognize that the statute treats timing identically for spouses and children. By giving "these same words a different meaning for each category [of non-citizen]," the agency "invent[ed] a statute rather than interpret[ing] one." Clark v. Martinez, 543 U.S. 371, 378 (2005).

Second, Congress's use of the phrase "accompanying, or following to join," requires the same interpretation of the statute. Earlier immigration laws contained the same phrase. See Immigration Act of 1924, ch. 190, § 13(c), 43 Stat. 153, 162. Indeed, Congress used the phrase "accompanying or following to join" to define spouses who may be treated as derivative beneficiaries when a non-citizen adjusts her status to that of a lawful permanent resident under 8 U.S.C. § 1255(i). See 8 U.S.C § 1255(i)(1)(B) (incorporating 8 U.S.C. § 1153(d)). Under this 1994 enactment, spouses "accompanying or follow to join" the principal petitioner may be treated as such so long as the spousal relationship exists before the government grants the principal's application for adjustment of status. Landin-Molina v. Holder, 580 F.3d 913, 919 (9th Cir. 2009) (citing Matter of Naulu, 19 I. & N. Dec. 351, 352 n.1 (BIA 1986)).

When Congress added the "accompanying, or following to join" phrase to § 1101(a)(15)(U)(ii) through the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 801, 119 Stat. 2960, 3054 (2006), that phrase had uniformly, and for decades, been interpreted to mean that eligibility for derivative status is measured at the time the principal petitioner is granted an immigration benefit, not at the earlier time when the principal petitioner applied for that benefit. See Santiago v. INS, 526 F.2d 488, 490–91 (9th

9

Cir. 1975) (en banc) (identifying eligible derivative beneficiaries as those who have a qualifying relationship with the principal petitioner when the principal petitioner "actually entered" or at the time of "the grant of a preference" to the principal). Indeed, a policy memorandum from the former INS stated that "after-acquired" children and spouses may "adjust under [§ 1255(i)] as long as they acquire the status of a spouse or child before the principal alien ultimately adjusts status." Landin-Molina, 580 F.3d at 919 (quoting Accepting Applications for Adjustment of Status Under Section 245(i), HQ 70/23.1-P, HQ 70/8-P, at 5 (June 10, 1999), reproduced at 76 Interpreter Releases 1017 (July 2, 1999)).

We are aware of no precedent predating 2005, and the agency has cited none, ruling that the phrase "accompanying, or following to join," either (a) referred to a time before the principal petitioner received an immigration benefit or (b) was ambiguous.

Thus, we turn to a second familiar interpretive principle: "When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019) (internal quotation marks omitted). The term "accompanying, or following to join," was obviously transplanted from other immigration statutes. The phrase therefore brought with it the settled meaning that, in the absence of an express carve-out such as 8 U.S.C.

10

§ 1101(a)(15)(U)(ii)(I), the statute measures the derivative relationship only at the time the principal petitioner <u>receives</u> an immigration benefit. <u>Cf.</u> <u>Comm'r v. Keystone Consol. Indus., Inc.</u>, 508 U.S. 152, 159 (1993) ("The phrase 'sale or exchange' had acquired a settled judicial <u>and administrative</u> interpretation over the course of a half century before Congress enacted in § 4975 the even broader statutory language of 'any direct or indirect . . . sale or exchange.' Congress presumptively was aware when it enacted § 4975 that the phrase 'sale or exchange' consistently had been construed to include the transfer of property in satisfaction of a monetary obligation." (emphasis added)).

The two interpretive principles on which we rely work in tandem here. The carve-out for siblings under the age of 18 was necessary precisely because Congress understood that the settled meaning of "accompanying, or following to join," referred to the date on which an immigration benefit is granted, not to the date on which the application for that benefit was filed.

In summary, we hold that the statute clearly answers the relevant interpretive question: to qualify for a derivative U visa as a spouse, a person need not have been married to the principal applicant at the time the application was filed, so long as the marriage exists when the principal applicant receives a U visa. Accordingly, our analysis ends at <u>Chevron</u> step one, without resort to step two. <u>Pereira v.</u>

11

<u>Sessions</u>, 138 S. Ct. 2105, 2113–14 (2018).  Title 8 C.F.R. § 214.14(f)(4) is invalid insofar as it requires a derivative U-visa spouse to have been married to the principal petitioner when the application was filed.

Plaintiffs were married by the time Medina Tovar was granted a U visa on October 1, 2015.  As of March 29, 2016, when Medina Tovar petitioned for derivative U-visa status, her husband was entitled to receive a U visa if he otherwise met the requirements.

**REVERSED.**

COLLINS, Circuit Judge, with whom BUMATAY, Circuit Judge, joins, concurring in the judgment:



I agree with the majority that the agency regulation at issue here is inconsistent with the applicable statute, but I reach that conclusion for somewhat different reasons. I therefore concur only in the judgment.

## I

Maria Medina Tovar is a native and citizen of Mexico who was brought to the United States in 1998 when she was six years old. She has lived in the United States ever since. In November 2004, when she was only twelve years old, Medina Tovar was sexually assaulted in Seaside, Oregon on two separate occasions by a stranger who had also repeatedly stalked her outside of her school. On June 14, 2013, she filed with U.S. Citizenship and Immigration Services ("USCIS") a "Form I-918" petition for a so-called "U-visa," which refers to a special type of non-immigrant visa for certain aliens who have been victims of crime in the United States. The U-visa is so named because the category of persons eligible for such visas is set forth in subparagraph (U) of § 101(a)(15) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(U). In support of her application, Medina Tovar submitted a certification from the Seaside, Oregon Chief of Police attesting to her assistance in the investigation of the crimes back in 2004. In early 2014, USCIS notified Medina Tovar that she likely qualified for a U-visa but that

the statutory cap for such visas for that fiscal year had already been met. She was finally notified on November 24, 2015 that her U-visa had been granted, with an effective date of October 1, 2015 (which was the first day of fiscal year 2016).

During the more than two years that her application was pending, Medina Tovar married Adrian Alonso Martinez, a Mexican citizen, on September 21, 2015. Thereafter, as the holder of a primary U-visa (known as a "U-1 visa"), Medina Tovar on March 29, 2016, filed a petition for a *derivative* U-visa on Martinez's behalf, using the prescribed "Form I-918, Supplement A." However, on November 23, 2016, USCIS denied the derivative petition on the ground that Medina Tovar had not been married to Martinez on June 14, 2013, when she had filed her own petition for a U-visa. This denial was based on an agency regulation which provides that, subject to certain exceptions not applicable here:

> [T]he relationship between the U-1 principal alien and the qualifying family member must exist at the time Form I-918 was filed, and the relationship must continue to exist at the time Form I-918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States.

8 C.F.R. § 214.14(f)(4).

Because the agency was bound by its own controlling regulation, Plaintiffs Medina Tovar and Martinez ("Plaintiffs") did not attempt to pursue any further administrative remedies. Instead, in May 2017, they filed this action against the director of the relevant USCIS service center, as well as the Secretary of Homeland

2

Security (the head of the Department in which USCIS is housed) and the Attorney General.  In their complaint, Plaintiffs allege that the regulation is invalid because, *inter alia*, it "adds a restriction that is not part of the statute enacted by Congress." Specifically, Plaintiffs contend that the statute only requires that Martinez be married to Medina Tovar by the time that she *obtained* her U-visa and that they need not have been married at the time she *applied* for her visa.  Plaintiffs also contend that the regulation's timing requirement differed from that applied to derivative applications for other forms of immigration relief and that the resulting distinction violated the equal protection component of the Fifth Amendment's Due Process Clause.  Based on these allegations, Plaintiffs sought relief, *inter alia*, under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and under the Declaratory Judgment Act.

Defendants filed a motion for summary judgment, which the district court granted.  Applying the two-step framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the court first concluded that the relevant statutory language setting forth the eligibility for a derivative U-visa "did not directly address the precise question at issue as to the derivative U visa status," and it then held that the regulation was a permissible construction of the statute.  The court separately rejected Plaintiffs' contention that the regulation violated equal protection.  Plaintiffs timely appealed.  After a divided panel

3

affirmed the district court's judgment, *see Medina Tovar v. Zuchowski*, 950 F.3d

581 (9th Cir. 2020), we granted rehearing en banc, *see Medina Tovar v.

Zuchowski*, 957 F.3d 1381 (9th Cir. 2020).[1]

## II

The parties have squarely placed before us the question of whether the

regulatory requirement that "the relationship between the U-1 principal alien and

the qualifying family member must exist at the time Form I-918 was filed," *see*

8 C.F.R. § 214.14(f)(4), is consistent with the description of the class of persons

---

[1] I disagree with the Government's suggestion that this case became moot when, during the pendency of this appeal, Medina Tovar on July 3, 2019 became a lawful permanent resident and therefore no longer has U-visa status. As a majority of this court has concluded, the Government relied on a legally invalid ground in denying Martinez a derivative U-visa in November 2016, when Medina Tovar *did* have U-visa status, and I do not think that the Government has carried its heavy burden to show that "it is *impossible* for a court to grant *any* effectual relief" for the Government's unlawful action. *Knox v. Service Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (emphasis added) (simplified). In arguing that we cannot order USCIS to "go back in time" and to approve her husband's U-visa status "as of that date," the Government relies only on *Zixiang Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013). There, we addressed a claim challenging alleged errors in a different visa program, and we held that, because Congress had directed that the limited number of visas in question "expire[d] at the end" of each fiscal year, that "render[ed] moot any claim for a visa number from a prior year." *Id*. at 1002. In holding that no retroactive remedy was available, we emphasized that Congress had statutorily capped the number of visas available in a given year, and that the plaintiffs' claim effectively sought to "recapture" scarce visas that had "already been allocated to other individuals." *Id*. But this rationale does not apply here because *derivative* U-visas are explicitly *not* subject to a strict numerical annual allocation that expires each fiscal year. *See* 8 U.S.C. § 1184(p)(2)(B) (annual cap that applies to U-1 visas does not apply to derivative U-visas).

4

who are eligible for derivative U-visas in § 101(a)(15)(U)(ii) of the INA. *See*

8 U.S.C. § 1101(a)(15)(U)(ii). We evaluate that contention by applying the two-

step framework established in *Chevron*, 467 U.S. at 842–43. Under that

framework, a court first "ask[s] whether the statute is ambiguous and, if so," the

court then addresses, at step two, "whether the agency's interpretation is

reasonable." *King v. Burwell*, 576 U.S. 473, 485 (2015). In determining whether a

statute is ambiguous at step one, "a court must exhaust all the 'traditional tools' of

construction." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (quoting *Chevron*,

467 U.S. at 843 n.9) (making this observation with respect to the interpretation of

agency rules, but noting that *Chevron* "adopt[ed] the same approach for ambiguous

statutes"); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018)

(explaining that under *Chevron*, "deference is not due unless" the traditional tools

of construction do not resolve the ambiguity).

In addressing whether the statute governing derivative U-visa eligibility is

ambiguous on the question of *when* the spousal relationship must exist, the parties

have focused their arguments, as the majority does, on whether one particular

phrase in § 101(a)(15)(U)(ii)—"accompanying, or following to join,"—should or

should not be understood to contain a temporal element that settles the question in

Plaintiffs' favor. But once the correct interpretation of a statute "is properly before

the court, the court is not limited to the particular legal theories advanced by the

5

parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *accord Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013). I agree with the majority's ultimate conclusion that the plain language of the statute only requires that the spousal relationship be in existence by the date that the primary applicant (here, Medina Tovar) is *granted* her U-visa, but my reasoning is based more narrowly on the unique wording of § 101(a)(15)(U).[2] The agency's attempt by regulation to narrow the class of spouses who are eligible for derivative U-visas to only those persons who were spouses on the day the primary applicant *applied* for such a visa therefore fails at *Chevron* step one.

**A**

As with any question of statutory interpretation, we must "begin with the text of the statute," *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011), and here the statute unambiguously addresses the temporal issue of when the derivative applicant must be the "spouse" of the primary applicant.

Clause (i) of § 101(a)(15)(U) of the INA describes the class of primary persons who are eligible for U-visas, and clause (ii) of that same subsection sets

---

[2] I therefore express no view as to whether the majority is correct in its broader holding that the phrase "accompanying, or following to join,"—a phrase that appears in literally dozens of immigration provisions—itself includes a temporal component.

6

forth the class of persons who may obtain derivative U-visas. 8 U.S.C. § 1101(a)(15)(U). Specifically, cause (ii) states that the following persons are eligible for derivative U-visas:

> (ii) if accompanying, or following to join, the alien described in clause (i)—
> (I) in the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien; or
> (II) in the case of an alien described in clause (i) who is 21 years of age or older, the spouse and children of such alien . . . .

8 U.S.C. § 1101(a)(15)(U)(ii). Because Medina Tovar was already 21 years of age when she first filed her primary U-visa application, there is no dispute that the relevant subclause here is (ii)(II). Martinez is therefore eligible for a U-visa if he is (1) "accompanying, or following to join, the alien described in clause (i)" and (2) is the "spouse . . . of such alien." *Id*.

The common link in these two requirements is the phrase "alien described in clause (i)," because Martinez must be both the "spouse" of such a person and "accompanying, or following to join," that same person. An "alien described in clause (i)" includes a person who—subject to certain limitations that are not at issue here with respect to Medina Tovar—meets the following description:

7

(U)(i) . . . an alien who files a petition for status under this subparagraph, *if the Secretary of Homeland Security determines* that—

(I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

(II) the alien . . . possesses information concerning criminal activity described in clause (iii);

(III) the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and

(IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States . . .

8 U.S.C. § 1101(a)(15)(U)(i) (emphasis added).  Under the plain terms of this provision, an "alien described in clause (i)" is someone who "files a petition for [U-visa] status" but *only* "if the Secretary of Homeland Security *determines*" that the petitioner meets the four criteria set forth in (I)–(IV).  *See id*. (emphasis added).  The principal U-visa holder, therefore, is not an "alien described in clause (i)" merely because, as an underlying factual matter, she actually satisfies each of the four enumerated criteria in subclauses (I)–(IV).  Rather, she does not and cannot meet the definition of an "alien described in clause (i)" unless and until USCIS affirmatively *grants* that alien's U-visa petition.

That makes the statutory issue in this case relatively straightforward.  The date on which Medina Tovar first became an "alien described in clause (i)" was on

8

October 1, 2015, which was the effective date on which her petition was granted. Prior to that date, she was just an applicant for a principal U-visa and not an "alien described in clause (i)." Clause (ii) of the statute tells us that the class of persons who may apply for derivative U-visas includes the "spouse" of an "alien described in clause (i)" who is "accompanying, or following to join," that person. By using the phrase "alien described in clause (i)," the definition of derivative U-visa eligibility in clause (ii) thereby necessarily incorporates the same temporal aspect that is inherent in clause (i). That is, because an "alien described in clause (i)" *only* means an alien who has been affirmatively "determine[d]" to be eligible for a U-visa, the very earliest that someone (such as Martinez) could possibly be said to be "the spouse . . . of such alien" is likewise when that alien's principal U-visa application is approved. The question, then, is whether Martinez was the "spouse" of Medina Tovar and was "accompanying, or following to join," her on the day that she first became an "alien described in clause (i)"—*viz.*, October 1, 2015. Because Medina Tovar and Martinez were married ten days earlier on September 21, 2015, he was indisputably the "spouse . . . of such alien" on October 1. And because the Government does not dispute that, if Martinez was Medina Tovar's "spouse" on the relevant day, he was also "accompanying, or following to join," her on that same day, it follows that Martinez meets the statutory definition in clause (ii) and was eligible for a derivative U-visa. *Cf. Landin-Molina v. Holder*,

9

580 F.3d 913, 918–19 (9th Cir. 2009) (eligibility of a "spouse" who is "accompanying or following to join" a principal alien for a derivative immigrant visa under INA § 203(d), 8 U.S.C. § 1153(d), implicitly includes a "temporal element of already *being* a 'spouse'" at "the time the principal adjusted status" (emphasis added)).

## B

In addition to being compelled by the statute's plain language, there are three additional textual clues in the statute that strongly confirm the correctness of this reading. The first two relate to the statute's special rules that apply in the case of a primary U-visa applicant who is under the age of 21, and so it is important first to set forth what those different rules are.

As noted earlier, the statutory provision that defines derivative U-visa eligibility contains two separate subclauses, one that governs cases in which the primary applicant "is under 21 years of age" and one for cases in which that applicant "is 21 years of age or older." 8 U.S.C. § 1101(a)(15)(U)(ii)(I)–(II). *See supra* at 7. For a primary applicant (such as Medina Tovar) who is 21 or older, the persons who are eligible for derivative U-visas are limited to the applicant's (1) "spouse" and (2) "children" and, for the reasons explained earlier, those relationships would be determined as of the date on which the primary applicant's U-visa request is approved. *Id*. § 1101(a)(15)(U)(ii)(II). But "in the case of an

10

alien described in clause (i) who is under 21 years of age," the persons eligible for derivative U-visas are the primary applicant's (1) "spouse"; (2) "children"; (3) "unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause"; and (4) "parents." *Id.* § 1101(a)(15)(U)(ii)(I). Absent any contrary indications in the statutory text, the determination as to whether a person falls within one of these four categories would likewise be made at the time the primary applicant's U-visa is granted. But here, there *are* contrary indications, because, in the case of an under-21 primary applicant, Congress has created two special rules that override the otherwise applicable default temporal rule.

First, in the case of "unmarried siblings under 18 years of age," the statute specially provides that the determination of whether the unmarried sibling is "under 18 years of age" is to be made "on the date on which such [primary] alien applied for status under such clause." 8 U.S.C. § 1101(a)(15)(U)(ii)(I). The existence of this special language confirms that, without it, the applicable temporal rule would have been different, and it also confirms that the temporal rule *is* different in those instances in INA § 101(a)(5)(U)(ii) in which that special language is not used. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

11

intentionally and purposely in the disparate inclusion or exclusion." (simplified)).

Thus, had Congress wanted to have the determination of who counts as a "spouse" made on that earlier date—*i.e.*, rather than on the date on which the primary applicant becomes an "alien described in clause (i)"—it presumably would have applied that same distinctive phrase to the term "spouse" as well. But Congress included that phrase only in *one* of the four categories of aliens in the subclause governing under-21 primary applicants, and it did not include that phrase *at all* in the separate subclause governing 21-and-over primary applicants.

The statute's second special textual rule relates to another aspect of derivative U-visa eligibility "in the case of an alien described in clause (i) who is under 21 years of age." 8 U.S.C. § 1101(a)(15)(U)(ii)(I). Because, as explained, a primary U-visa applicant does not become "an alien described in clause (i)" until his or her primary application is *approved*, the statutory phrase "an alien described in clause (i) who is under 21 years of age," without more, would necessarily mean that the age determination is made as of the date that the primary application is approved. That would be a very harsh rule, however, because it would mean that the tag-along derivative applicants might *lose* their eligibility simply because the primary application took too long to process. It is unsurprising, therefore, that Congress enacted a special temporal rule that expressly precludes that result. Thus, the description of who is eligible for a primary U-visa in clause (i) of INA

12

§ 101(a)(15)(U) is explicitly made "subject to section 1184(p) of this title [§ 214(p) of the INA]." *Id.* That section, in turn, contains a provision stating that:

> An alien described in clause (i) of section 1101(a)(15)(U) of this title [§ 101(a)(15)(U) of the INA] shall continue to be treated as an alien described in clause (ii)(I) of such section if the alien attains 21 years of age after the alien's application for status under such clause (i) is filed but while it is pending.

8 U.S.C. § 1184(p)(7)(B). By providing that a primary applicant who was under 21 when the application was *filed* shall continue to be treated as being under 21 for derivative-eligibility purposes, this provision thus expressly overrides what would otherwise have been the ordinary meaning of the relevant language in INA § 101(a)(15)(U)(i). The need for, and existence of, this special temporal rule—which uses the date of filing as controlling rather than the date of approval—again confirms that, absent such a special rule, the age of an "alien described in clause (i)" would have been determined at the time that the U-visa petition was *approved*. The existence of this special temporal provision thus further confirms the plain meaning of INA § 101(a)(15)(U), as set forth earlier.[3]

---

[3] Moreover, the statute's use of the term "treated" underscores that the situation described by INA § 214(p)(7)(B) is otherwise contrary to what the applicable legal rules would require. Thus, once a primary U-visa application is approved and that person becomes an "alien described in clause (i)"—which is when derivative applications can first be adjudicated—the alien shall then "continue to be *treated*" as meeting the under-21 specification in subclause (ii)(I) *even though the alien does not actually meet that specification* because "the alien attain[ed] 21 years of age after the alien's application for status under such clause (i) [was] filed but while it [was] pending." 8 U.S.C. § 1184(p)(7)(B).

13

The statute's third textual clue relates to the derivative U-visa eligibility of the "children" of *either* type of primary U-visa recipient—*viz.*, the "children" of "an alien described in clause (i) who is under 21 years of age" and the "children" of "an alien described in clause (i) who is 21 years of age or older." 8 U.S.C. § 1101(a)(15)(U)(ii). The statutory definition of "child" that applies to titles I and II of the INA—which titles include the U-visa provisions in INA § 101(a)(15)(U) and § 214(p)—states that a "child," in addition to meeting certain other requirements, must be "an unmarried person *under twenty-one years of age*." 8 U.S.C. § 1101(b)(1) (emphasis added). As previously explained, absent some provision to the contrary, the determination of whether a person is a "child" of "an alien described in clause (i)" would be made as of the date that person's primary-applicant parent first became "an alien described in clause (i)"—*i.e.*, it would be made as of the date the parent's U-1 visa was granted. This would again mean that a derivative alien who was under 21 years of age when the primary alien *applied* for U-visa status could lose that chance for derivative eligibility simply due to a delay in processing the primary alien's application. But Congress again overrode that harsh result by enacting INA § 214(p)(7)(A), 8 U.S.C. § 1184(p)(7)(A). This provision explicitly changes the date as of which the age of a primary U-visa holder's child is calculated:

14

> An unmarried alien who seeks to accompany, or follow to join, a parent granted status under section 1101(a)(15)(U)(i) of this title [§ 101(a)(15)(U)(i) of the INA], and who was under 21 years of age on the date on which such parent petitioned for such status, shall continue to be classified as a child for purposes of section 1101(a)(15)(U)(ii) of this title, if the alien attains 21 years of age after such parent's petition was filed but while it was pending.

8 U.S.C. § 1184(p)(7)(A).[4]  The need for this special temporal rule confirms yet again that, in its absence, the plain meaning of INA § 101(a)(15)(U) sets a temporal requirement that the relevant characteristics of derivative U-visa applicants are to be determined as of the date on which the primary U-visa applicant first becomes "an alien described in clause (i)," which is the date that the primary U-visa application is approved.

*　　*　　*

The relevant statutory text thus makes overwhelmingly clear that the determination of whether someone is a "spouse" of an "alien described in clause (i)" must be made as of the date that the primary applicant becomes such an alien, which is the effective date that the primary application is granted.  And here, Martinez was indisputably Medina Tovar's spouse on that date.[5]

---

[4] Like § 214(b)(7)(B)'s use of "treated," this provision's use of "classified" similarly denotes that the applicant will be *deemed* to meet a criterion that he or she actually does not satisfy.  *See supra* note 3.

[5] The dissent charges that I have engaged in a "fine-grained parsing of the statutory text," *see* Dissent at 10 n.2—a charge to which I am honored to plead guilty.

**III**

Because the statutory definitions of U-visa eligibility contain their own built-in temporal element, the agency lacked the authority to establish an *earlier* temporal requirement that is stricter than the one Congress established. To the extent that 8 C.F.R. § 214.14(f)(4) purports to do so, it is legally invalid. Because Martinez satisfied the statutory requirement that the regulation improperly sought to modify, Defendants acted unlawfully in denying him a U-visa on that basis.[6] I would therefore reverse the district court's judgment and remand the matter for further proceedings.

---

[6] This conclusion moots Plaintiffs' equal protection challenge, and I therefore do not address it.

*Medina Tovar v. Zuchowski,* **No. 18-35072**

CALLAHAN, Circuit Judge, with whom BRESS and BENNETT, Circuit Judges join, dissenting:

In the battle of competing aphorisms I think that "context matters" prevails over the interpretive canon "bringing the old soil with it." The majority looks at the inherently ambiguous language in 8 U.S.C.§ 1101(a)(15)(U)(ii)—"if accompanying, or following to join"—and somehow concludes that Congress commanded that "a person need not have been married to the principal applicant at the time the application was filed, so long as the marriage exists when the principal applicant receives a U visa." Op. at 11. Perhaps this is a reasonable interpretation of the language, but I dissent because it is not the only reasonable interpretation. More importantly, by conjuring up Congress's "understanding," the majority unreasonably constricts the agency's responsibility to interpret the ambiguous statute.

This is an invitation to mischief in at least two ways. First, in light of the time it takes for the processing of a U visa, it is an invitation to commit marriage fraud by creating a means by which a person who is not legally in the country may obtain legal status by marrying a U-visa applicant before the application is granted. Second, the opinion suggests that courts can dictate to an agency an interpretation of a statute by searching precedents in different contexts to establish a binding

1

legislative understanding.  Indeed, it does so under the first prong of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), asserting that the intent of Congress is clear.  *See* Op. at 7.

Although, as Judge N.R. Smith noted in his opinion for the three-judge panel, "Congress has never directly addressed when a qualifying relationship must exist," *Medina Tovar v. Zuchowski*, 950 F.3d 581, 587 (9th Cir. 2020), *rehearing en banc granted*, 957 F.3d 1381, the majority reaches its conclusion by focusing on subclause (ii)(I), which states:

> in the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, *unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause*, and parents of such alien;

(emphasis added).

This provision states that, for a U-visa applicant (an alien described in clause (i)), a sibling may qualify for a derivative U visa if that sibling was not married and was under 18 when the principal applied for a U visa.  This clearly limits the class of individuals who can qualify for derivative status, but it need not be interpreted as addressing "accompanying, or following to join."  At the very least, it does not do so unambiguously.  Nonetheless, the majority claims that the language "unmarried siblings under 18 years of age on the date on which such alien applied for status" indicates that "Congress clearly thought about the timing question." Op. at 7.  But, as noted,  it seems more likely that Congress was defining who was

2

eligible for derivative benefits.  The phrase is found in the middle of a section

providing that, for an applicant under the age of 21, his or her spouse, children,

parents, and unmarried siblings under the age of 18 are eligible for derivative

status.  Congress clearly did not intend for adult unmarried siblings to be eligible.

Therefore, it was necessary to draw a line, to select a date.  The date of an

application's approval is unknowable at the time of a U-visa application is filed.

But the date of the application is obvious and provides clear guidance to the

applicant and his or her siblings.

The majority proceeds to employ the maxim "[w]here Congress includes

particular language in one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts intentionally and purposely

in the disparate inclusion or exclusion."  Op. at 7–8 (quoting *Nken v. Holder*, 556

U.S. 418, 430 (2009)).  But this general presumption is premised on the

determination that Congress's use of particular language in the first instance was

intended to address, or inherently addresses, the issue in the second section.  In our

case, however, the language at issue was used to define which siblings might be

eligible for derivative benefits; it does not clearly define or address

"accompanying, or following to join," even for such eligible siblings.

A careful reading of the Chief Justice's opinion in *Nken* supports this

distinction.  That case concerned whether a statutory provision addressing certain

3

injunctions also applied to stays. 556 U.S. at 431. The Court's opinion

acknowledges "that statutory interpretation turns on 'the language itself, the

specific context in which that language is used, and the broader context of the

statute as a whole.'" *Id.* at 426 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337,

341 (1997)). However, after stating the maxim quoted by the majority, the Court

proceeded to observe that the language at issue was not where it would naturally be

if intended to apply to stays. *Id.* at 431. It also commented that it "frequently

takes Congress's structural choices into consideration when interpreting statutory

provisions." *Id.* at 431.

Here too, we have language which arguably could be interpreted as

addressing "accompanying, or following to join" but which is not located where it

would naturally be located to do so and which serves, and presumably was

intended to serve, a distinct purpose: limiting the eligibility for siblings of an under

21-year-old applicant to those who are under the age of 18.[1] Indeed, the majority

seems to reason backward, arguing that "Congress intended that the timing of the

petition is relevant with respect to <u>only one</u> category of relatives" and "the

regulation fails to recognize that the statute treats timing identically for spouses

---

[1] The very narrowness of this exception weighs against it being intended to define the broad term that applies to all derivative applicants. The clause "on the date on which such alien applied for status" applies only to minor siblings of an applicant who is herself under 21 years of age.

4

and children." Op. at 8. But this assumes that the subclause defining the eligibility of minor siblings of principals who are under 21-years-old was intended to "treat timing." Perhaps this is a possible interpretation of the statute, but it is not the only or the most likely explanation of Congress's intent.

And even if the majority were correct that the subclause concerning minor siblings addresses the timing question, the majority errs in concluding that this subclause unambiguously answers the timing question as to spouses. Because the subclause refers to "unmarried siblings under 18 years of age on the date on which such alien *applied for status* under such clause," the majority reasons that "the timing of the petition is relevant" only as to this "<u>one</u> category of relatives." Op. 8. But even if that negative implication is a permissible reading of the statute, it is certainly not inevitable.

As the three-judge panel majority explained, unlike spouses and parents, siblings face the possibility of "aging out" while the U-visa petition is pending. *See Medina Tovar*, 950 F.3d at 589. Thus, "[t]he fact that Congress addressed when the alien and other qualifying relatives should be assessed to preclude them from aging out, does not unambiguously mean that Congress intended that spouses be assessed at a different time than the date of application." *Id.* Spouses are differently situated from siblings because spouses cannot age out. *Id.* Thus, the

5

statutory text does not command that the date of assessment for spouses must be different than that for siblings.

The majority asserts that the phrase "accompanying, or following to join," has existed in various statutes for decades and suggests that it has been uniformly interpreted. But the majority does not cite a single instance in which either a court or agency has held that the phrase precluded the agency from requiring that the marriage exist at the time of a U-visa application. Neither of the Ninth Circuit's cases cited by the majority does so. These cases do consider the phrase "accompanying, or following to join" but not in a manner that supports the majority's position.

In *Landin-Molina v. Holder*, 580 F.3d 913 (9th Cir. 2009), Landin-Molina conceded that he could not satisfy the "accompanying, or following to join" requirement "because his marriage occurred *after* his wife adjusted to lawful permanent resident status." *Id*. at 919. We explained:

> The plain language of § 1153(d) requires that the derivative "spouse" accompany or follow to join the principal "spouse." Implicitly there is a temporal element of already being a "spouse." Thus, § 1153(d) clearly contemplates that the marital relationship exists before the principal receives immigrant status. Such a construction is consistent with our observation in *Santiago*[*v. INS*, 526 F.2d 488 (9th Cir. 1975) (en banc),] that Congress intended to "preserve"—i.e., maintain—the unity of existing families by permitting qualifying aliens to bring their families with them or to send for them later. If the marital relationship transpires after the principal receives immigrant status, the putative derivative spouse cannot have accompanied or followed to join a "spouse" because there was simply no spouse to accompany

6

or follow at the time the principal adjusted status, and the language of § 1153(d) implicitly requires that the derivative spouse be a "spouse" before the principal adjusts status.

*Id*. (citation omitted).

Certainly, *Landin-Molina* required that the derivative beneficiary be married to the principal at the time the principal adjusts status. But it did not address how long prior to that date the derivative beneficiary had to be married to the principal. There is nothing inherent in the phrase "accompanying, or following to join" that would require the marriage to exist only at the time of application approval, as opposed to at the time the application is filed. The phrase "accompanying, or following to join" can reasonably be interpreted to imply that the marriage should exist when the principal applies for U-visa benefits.

*Santiago v. INS*, 526 F.2d 488 (9th Cir. 1975) (en banc), does little to support the majority's interpretation of Congress's intent. There we held that the government was not estopped from excluding a derivative beneficiary who was erroneously admitted prior to the arrival of the principal in the United States. We explained:

> Petitioners initially contend that the words "accompanying, or following to join" in 8 U.S.C.§ 1153(a)(9) should be construed to also mean "preceding with the hope (or expectation) of being joined later." There is no authority for such a construction. The plain language of the statute is designed to assure that those aliens who derive their preference cannot exercise their right to enter until the person from whom they derive their preference has actually entered. Congress clearly intended to preserve family unity by this language and to

7

permit the lawfully entering alien to either bring his family with him or to send for them later when he had the ability to do so. But there is nothing in this language to indicate that Congress ever intended that the grant of a preference to one alien would effectively work a grant of a like preference to the members of his family so that they might enter at whatever time they wished. If Congress had wished to equate derivative preferences with actual preferences the words "accompanying, or following to join" would be absent from this statute.

*Id*. at 490–91.

Thus, we found the language "plain" in regard to when a derivative beneficiary could enter the United States. But we did not otherwise comment on when the relationship had to exist. Yet again, our reference to the purpose of preserving family unity might be construed as suggesting that the relationship should exist when the beneficiary sought to enter the United States.

Perhaps more importantly, regardless of how one reads our opinions in *Landin-Molina* and *Santiago*, they do not readily support the argument that Congress commanded that the spousal relationship need exist only at the time a U-visa petition is granted. Both cases were in the context of immigrant aliens, whereas the U visa is a nonimmigrant visa. *See Landin-Molina*, 580 F.3d at 915; *Santiago*, 526 F.2d at 489; *see also* 8 U.S.C. § 1101(a)(15)(U). As the three-judge panel majority explained, "immigrant and nonimmigrant statutes are aimed at addressing different concerns, have different requirements, and extend different benefits to the status holder. Thus, although the same textual phrase—

8

'accompanying, or following to join'—is used in these contexts, the nature and purpose underlying the grants of status differ significantly." *Medina Tovar*, 950 F.3d at 591.

A U visa is not an immigration visa, but "operates to grant limited, temporary, nonimmigrant status to aliens already present in the United States who were victims of a serious crime." *Id*. at 590. These differences suggest both that the date of a U-visa application is somewhat analogous to the date an immigrant enters the United States and that the interpretation of the phrase in an asylum proceeding is not necessarily applicable to a U-visa application.

In addition, it is notable that the timing rules are different for asylees and refugees. For refugees the qualifying relationship must exist at the time of the refugee's admission to the United States, whereas for asylees the relationship must have existed at the time the principal alien's asylum application was approved. *Id.* at 588 (citing 8 C.F.R. §§ 207.7(c), 208.21(b)). This underscores the conclusion that the phrase "accompanying, or following to join" does not possess a fixed meaning foreclosing the agency's interpretation.

In any event, a review of our prior cases and the matters cited by the majority fail to support its determination of Congress's clear intent. Indeed, the majority does not assert that Congress has ever directly addressed this issue. Instead, by asserting a negative implication based on language in 8 U.S.C.

9

§ 1101(a)(15)(U) and citing instances in which the phrase was interpreted in distinct contexts, it projects onto Congress an absolute view that is not supported by the text or any Congressional action. Certainly, Congress is responsible for circumscribing an agency's responsibilities, and we have a constitutional duty to see that an agency does not exceed its authorization. But we exceed our role when we parse obscure passages in complex legislation, use distinguishable case law, and cite a "familiar interpretative principle" to ascribe to Congress not only knowledge of the agency's alleged interpretation, but also an absolute view barring the agency's evolving view of a statute's ambiguous terms.[2]

Accordingly, I respectfully dissent because I cannot conclude that Congress understood or intended "accompanying, or following to join" to mean that the agency could not require that an applicant for a derivative benefit from a U-visa applicant be married to the principal when the U-visa application was filed.

---

[2] I find Judge Collins's separate concurrence similarly unpersuasive. His reading of the statute is not one that any party in this litigation has put forward. Regardless, Judge Collins's fine-grained parsing of the statutory text at most confirms that his reading of the statute is permissible, not that it is compelled.